S93Q0484. AMICA MUTUAL INSURANCE COMPANY
v. BOURGAULT et al.
(429 SE2d 908)

HUNT, Presiding Justice.

In this certified question from the Eleventh Circuit Court of Appeals, we are asked:

Whether with respect to a[n] automobile insurance policy which covers vehicles principally garaged and used in another state but which is sold and delivered to a resident of Georgia, OCGA § 33-7-11 acts to invalidate an underinsured coverage exclusion which attempts to limit coverage because the insured was injured in a vehicle not covered by the policy.

We answer the question in the negative.

The relevant facts, as certified by the Eleventh Circuit, are as follows:

On March 16, 1990, the appellant, Cheryl A. Bourgault, was involved in a collision with a vehicle driven by Pamela O'Neal. Bourgault sustained injuries and incurred medical expenses of over $300,000. O'Neal had liability coverage in the amount of $15,000 per person/$30,000 per accident, and Bourgault recovered the $15,000 limit from O'Neal's insurance company. Bourgault then turned to her own insurance company to recover payment through the uninsured/underinsured provisions of her own insurance policies.

At the time of the collision, Bourgault and her husband, Leo, had purchased two insurance policies from the appellee, Amica Mutual Insurance Company ("Amica"). The first policy, numbered 910210-2039 (the "Georgia policy"), covered two vehicles principally garaged and operated in Georgia, including the vehicle Bourgault was driving when she collided with O'Neal. This policy provided uninsured/underinsured coverage of $100,000 per accident. Under this policy, Amica has paid the Bourgaults $85,000, representing the $100,000 coverage less the $15,000 payment from O'Neal. The Bourgaults raise no issues with respect to the coverage of the Georgia policy.

The second policy, numbered 910231-2093 (the "New

York policy"), covered three vehicles registered and principally garaged and operated in New York and was in effect from February 1, 1990 to February 1, 1991. This policy was written by a New York branch office of Amica, using New York forms, and based on New York rates. However, the Bourgaults purchased the policy as residents of Georgia, and the policy was delivered to them in Georgia. The New York policy provided uninsured/underinsured coverage of $50,000 per "accident." This policy also contained an exclusion limiting uninsured/underinsured coverage which read as follows:

INSURING AGREEMENT
A. We will pay damages which an *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of *bodily injury*:
   1. Sustained by an insured; and
   2. Caused by an accident . . . .
B. "Insured:" as used in this Part means:
   1. You or any *family* member.
   2. Any other person *occupying your covered auto.*
   3. Any person for damages that person is entitled to recover because of *bodily injury* to which this coverage applies sustained by a person described in 1. or 2. above.
EXCLUSIONS
A. We do not provide Uninsured Motorists Coverage for *bodily injury* sustained by any person:
   1. While *occupying*, or when struck by, any motor vehicle owned by you or any *family member* which is not insured for this coverage under this policy.

R1-7-Attachment 2-5-6; *See also*, R1-7-Attachment 2-Underinsured Motorist Coverage-1 (containing same language for underinsured coverage).

Following the collision, the Bourgaults sought to recover $50,000 under the New York policy. Amica contested the claim and brought a declaratory judgment action against the Bourgaults denying liability based upon the uninsured/underinsured exclusion provisions of the New York policy. Amica argued that the exclusion contained in the New York policy prevented Bourgault from recovering because Bourgault was occupying a vehicle which was not insured under the New York policy when she was hit. The Bourgaults defended by arguing that OCGA § 33-7-11 (a) (1) prevented

the application of the exclusion provision.[1] Therefore, the Bourgaults argued, they should be able to "stack" the New York policy on top of the Georgia policy and recover the additional $50,000 under the New York policy.

The district court held that OCGA § 33-7-11 (a) (1) did not apply to the facts of this case and granted summary judgment for Amica.

1. The task before us is one of statutory construction; we must, therefore, look to the language of the statute. (See footnote 1.) Amica argues that the logical reading of the statute is that OCGA § 33-7-11 applies only to policies insuring automobiles principally garaged or used in Georgia. On the other hand, the Bourgaults argue that the "principally garaged or principally used" language restricts only the phrase "or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle"; thus, OCGA § 33-7-11 would apply to any policy delivered to the owner of a vehicle and only require that the automobile be principally garaged or used in Georgia in cases in which the policy is issued or delivered to an individual other than an owner. For several reasons, we agree with the interpretation advanced by Amica.

In construing the meaning of ambiguous language in a Code section, we must look, where possible, to the original act; the language of the section should be construed as intending to state the previously existing law and not to change it unless such a purpose clearly manifests itself. *Aldridge v. Ga. Hospitality &c. Assn.*, 251 Ga. 234, 238 (304 SE2d 708) (1983). Here, there is no clearly manifested purpose to change the prior law; indeed, all indications are to the contrary.[2] Code Section 56.407.1, the predecessor of OCGA § 33-7-11, stated, in pertinent part:

No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of

---

[1] OCGA § 33-7-11 (a) (1) states:
No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle. . . .

[2] The deletion of the commas occurred as a result of the complete recodification of Georgia law in 1981 which produced the Official Code of Georgia Annotated. In that recodification, numerous changes, grammatical, stylistic and otherwise, were made; however, the commission made every effort to avoid changes in the substance of the law, and where a substantive change had to be made, a separate bill was introduced in the General Assembly to accomplish the change. (Forward by Code Revision Committee) See OCGA Vol. 1, page xi. No separate bill was introduced deleting these commas.

such vehicle or shall be issued or delivered by any insurer licensed in this state, upon any motor vehicle then principally garaged or principally used in this state, unless it contains [minimum provisions mandated by Georgia law].

The placement of commas around the phrase "or shall be issued or delivered by any insurer licensed in this State" clearly indicates that the legislature did not intend the "principally garaged and principally used" language to apply solely to this phrase; instead, the "principally garaged or principally used" language applies as well to policies delivered to owners referred to in the initial clause. Accordingly, the statute may be read:

No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle . . . upon any motor vehicle then principally garaged or principally used in this state, unless it contains [minimum provisions mandated by Georgia law].

Thus, for uninsured motorist purposes, OCGA § 33-7-11 does not invalidate an exclusion in a policy on a vehicle principally garaged and used outside of Georgia.

2. Our reading of this statute is supported by certain basic principles of fairness and comity set forth for the resolution of problems which arise when the laws of one state are in conflict with those of another state. One such principle is that the validity of and rights created by a liability insurance contract are to be determined by the law of the state which the parties understood to be the principal location of the insured risk during the term of the policy. Restatement, 2d, Conflict of Laws, § 193. This is true because, "in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged during most of the period in question." Id. Comment b. This directive has been applied in several cases which have addressed this problem, and we are persuaded that the principles advanced by § 193 promote fairness and stability.[3] In the present case, because the automobiles were garaged and used in New York, it was reasonable for the parties to assume that New York was the principal location of risk. It was also, therefore, more reasonable for the parties to expect that New York law rather than Georgia law would be determinative.[4] In keeping with this expectation, the

---

[3] See, e.g., *Nichols v. Anderson*, 788 F2d 1140 (5th Cir. 1986); *Boardman v. United Services Auto. Assn.*, 470 S2d 1024 (Miss. 1985); *Gillen v. United Services Auto. Assn.*, 300 S2d 3 (Fla. 1974).

[4] New York Insurance Law, § 3420 (f) (1) provides, in pertinent part:
No policy insuring against loss resulting from liability imposed by law for bodily

policy, which was issued in New York pursuant to and as required by New York law, on New York forms, used New York rates, which reflect the actual risks and costs of automobile operation in New York, for the calculation of the insurance premiums. Under these facts, application of OCGA § 33-7-11 to the New York policy would be unfair and would deprive insurance companies of the degree of certainty necessary for determining the cost and extent of coverage.

Our resolution of the question also serves to advance and preserve considerations of comity and full faith and credit. We are conscious of the fact that insurance law is set at the state level and that each of the 50 states provides insurance regulations deemed necessary and appropriate to protect the interests of its citizens. New York law governs policies of insurance on automobiles principally garaged and used in New York (see footnote 4). Likewise, it is proper to apply OCGA § 33-7-11 only to automobiles principally garaged and used in Georgia.

*Certified question answered in the negative. All the Justices concur.*

DECIDED JUNE 1, 1993.

*Carter & Ansley, A. Terry Sorrells, Christopher N. Shuman,* for appellant.

*Stevens & Gerson, Ervin H. Gerson,* for appellees.

---

injury or death suffered by any natural person arising out of ownership, maintenance, and use of a motor vehicle by the insured shall be issued or delivered upon any motor vehicle then principally garaged or principally used in the State unless it contains [provisions mandated by New York law].