S02G1194. IN THE INTEREST OF J. W. K., a child.

(578 SE2d 396)

SEARS, Presiding Justice.

We granted certiorari to consider the Court of Appeals' ruling in *In the Interest of J. W. K.*[1] that the juvenile court erred by holding that OCGA § 15-11-58 (which sets forth the reunification efforts required in deprivation actions) does not apply to this private child deprivation proceeding. As explained below, we conclude that by its express terms, OCGA § 15-11-58 does not apply to this case because the juvenile court did not order the removal of the child from his home. Furthermore, we conclude that OCGA § 15-11-58, as written at the time of the juvenile court ruling in this case, was not intended to apply to private deprivation proceedings. Therefore, we reverse.

J. W. K. was born in 1991. His biological mother is the appellee and his biological father is deceased. When J. W. K. was between one and two years old, his mother began leaving him overnight with his paternal aunt and uncle. By the time J. W. K. was two years old, his mother left him with his aunt and uncle on what amounted to a full-time basis. The mother would typically visit J. W. K. once a week, occasionally taking him to her home for an overnight stay, but always returning him to his aunt and uncle's home. When J. W. K. was five years old, his mother was hospitalized for addiction. When discharged, she stayed with J. W. K.'s aunt and uncle for approximately six weeks, until her boyfriend was released from jail. At that time, the mother moved in with her boyfriend, leaving J. W. K. behind at his aunt and uncle's home. Thereafter, the mother's visits with J. W. K. became more sporadic. Eventually, she saw J. W. K. approximately once a month and on occasions such as birthdays and Christmas.

J. W. K. is now almost twelve years old and has lived with his aunt and uncle for close to ten years. He is a straight "A" student and his Iowa Test of Basic Skills scores are in the top five percent of the nation. He is highly thought of by his teachers and peers. J. W. K.'s biological mother has shown little, if any, interest in his education.

J. W. K.'s biological father died in February 2000. Shortly thereafter, his aunt and uncle filed a deprivation petition in the juvenile court seeking emergency temporary custody of J. W. K., which was granted. Thereafter, J. W. K.'s maternal grandparents intervened, and consented to a finding of probable cause to find that J. W. K. was deprived and should be temporarily placed with his aunt and uncle with visitation granted to his biological mother.

A hearing was held four months later, at which the mother

---

[1] 254 Ga. App. 661 (563 SE2d 514) (2002).

sought custody of J. W. K. Evidence at the hearing demonstrated not only the facts discussed above, but also showed that the mother's live-in boyfriend is a habitual criminal, with a record that includes possession of a sawed-off shotgun, marijuana and cocaine possession, possession of methamphetamine with intent to distribute, burglary, sexual assault, and numerous misdemeanors. Evidence also demonstrated that J. W. K. feared for his safety during forced visits at his biological mother's house and that his mother and her boyfriend fought in his presence. J. W. K.'s guardian ad litem advocated strongly that he be permanently placed with his aunt and uncle. A licensed psychologist testified that in her opinion, J. W. K. would suffer emotional harm if he were removed from his aunt and uncle's home and placed with his biological mother.

After the hearing, the juvenile court found that J. W. K. had been deprived by his mother and that it was in the best interest of his physical, mental, emotional, and moral well-being that his aunt and uncle be granted legal custody over him for two years, and that his biological mother be granted such visitation as best serves J. W. K.'s interest.

The Court of Appeals reversed, finding that the juvenile court erred in concluding that OCGA § 15-11-58 does not apply to private deprivation matters. The appellate court held that under OCGA § 15-11-58, the juvenile court was required to determine as a matter of fact whether the Division of Family and Children Services of the Department of Human Resources (DFACS) had undertaken reasonable efforts aimed at reunifying J. W. K. and his biological mother, and if not, to instruct DFACS to determine whether reunification was appropriate and to propose a reunification plan to the court. We granted certiorari to consider this ruling, and we now reverse.

1. At the time of the juvenile court's ruling in this case, September 2000, OCGA § 15-11-58 (a) provided that:

A court's order removing a child from the child's home shall be based upon a finding by that court that continuation in the home would be contrary to the welfare of the child. The court shall also determine as a finding of fact whether reasonable efforts were made by [DFACS] and any other appropriate agencies to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removal of the child from that child's home, and to make it possible for the child to return safely to the child's home. Such findings shall also be made at every subsequent

review of the court's order under this chapter.[2]

This Code section contains 16 subsections that detail the extensive efforts that DFACS must undertake to attempt reunification, including extensive case plans and reports to be made to the court and the judicial citizens review panel, if applicable.[3]

By its express terms, OCGA § 15-11-58 applies only when a court orders the removal of "a child from the child's home."[4] In this appeal, the evidence is irrefutable that the only home J. W. K. has known for the past ten years is with his aunt and uncle. J. W. K.'s biological mother began leaving him with his aunt and uncle when he was between the ages of one and two, and after the age of two she left him there on what amounted to a permanent basis. The mother's visits with J. W. K. were infrequent at best, and there was testimony that she saw her son more in the four months that elapsed between the two juvenile court proceedings discussed above than in the entire preceding seven years. For ten years, J. W. K.'s aunt and uncle have provided for his well-being and have ensured that his physical, emotional, moral and educational needs have been met. During those same ten years, J. W. K. spent very little time in his mother's company, even less time in her home, and she assumed virtually no responsibility for, and showed little interest regarding, his well-being.

Furthermore, a licensed school psychologist testified before the juvenile court that J. W. K. considered his aunt and uncle's home to be his home, that he was disturbed by forced visitations at his biological mother's home, and that he considered his aunt to be his mother figure. The psychologist also testified that to remove J. W. K. from his aunt and uncle's home would result in the "breakdown of all the familial bonds that he knows."

Simply put, J. W. K.'s biological mother has not provided a home for him since he was two years old. Under the facts of this particular case, J. W. K.'s home is with his aunt and uncle. Therefore, the juvenile court's deprivation order did not order the removal of J. W. K. from his home. To the contrary, the order served to keep J. W. K. in the only home he has ever known. It follows that, by its own terms, OCGA § 15-11-58 (a) does not apply to this matter, and the Court of Appeals erred in concluding otherwise.

2. In May 2002, more than 18 months after the juvenile court's ruling in this case, OCGA § 15-11-58 was amended to specify that it applies only to deprivation actions in which a child is placed in the

---

[2] OCGA § 15-11-58 (a) (2000) (emphasis supplied).
[3] OCGA § 15-11-58 (b)-(q).
[4] OCGA § 15-11-58 (a).

custody of DFACS.[5] At the time of J. W. K.'s deprivation proceeding, however, the statute contained no language limiting its application; hence, it was unclear at that time whether OCGA § 15-11-58 also applied to private deprivation actions such as this one. The juvenile court concluded that the section did not apply to private deprivations, and the Court of Appeals reversed that ruling. As explained below, we conclude the Court of Appeals' ruling was erroneous.

Because OCGA § 15-11-58, as written before May 2002, was silent on the question of whether it applied to private deprivation proceedings, the legislature's May 2002 amendment excluding private deprivations from the statute is not necessarily inconsistent with the statute's previous language. Therefore, it is not clearly evident that the legislature intended to change the law as expressed in OCGA § 15-11-58.[6] In construing statutes, subsequent acts of the General Assembly may be considered in order to give effect to the legislative intent behind the earlier enactment.[7] In light of these legal precepts, we believe the May 2002 amendment to OCGA § 15-11-58 simply clarified the legislative intent of the statute as it existed at the time of the juvenile court's ruling in this matter. Therefore, we conclude that the juvenile court properly held that OCGA § 15-11-58 did not apply to private deprivation actions such as J. W. K.'s, and the Court of Appeals erred by concluding otherwise.[8]

*Judgment reversed. All the Justices concur.*

DECIDED MARCH 10, 2003.

*James F. Ledbetter*, for appellant.
*William R. Thompson, Jr.*, for appellee.
*George P. Govignon*, amicus curiae.

---

[5] OCGA § 15-11-58 (a), as amended by Ga. L. 2002, p. 1173 § 1 (SB 4280), effective May 16, 2002 ("A court's order removing a child from the child's home shall be based upon a finding by that court that continuation in the home would be contrary to the welfare of the child. If the court places custody of the child in [DFACS], the court shall also determine as a finding of fact [whether reasonable reunification efforts have been made by DFACS].").

[6] See *Aldrich v. City of Lumber City*, 273 Ga. 461, 464 (542 SE2d 102) (2001) (when Code sections are revised by the legislature, the language of the section as amended will be construed to state the law as it previously existed, absent the clear expression of a contrary intention); *Amica Mut. Ins. Co. v. Bourgault*, 263 Ga. 157, 159 (429 SE2d 908) (1993) (same).

[7] *Talbot County Bd. of Commrs. v. Woodall*, 275 Ga. 281, 282 (565 SE2d 465) (2002); *Board of Trustees &c. v. Christy*, 246 Ga. 553, 555 (272 SE2d 288) (1980).

[8] To the extent the Court of Appeals' opinion in *In the Interest of W. P. H.*, 249 Ga. App. 890 (549 SE2d 513) (2001), is inconsistent with our ruling today, it also is overruled.