A03A2563. KILLEARN PARTNERS, INC. et al. v. SOUTHEAST PROPERTIES, INC.
(597 SE2d 578)

PHIPPS, Judge.

Asserting its entitlement to a real estate brokerage commission, Southeast Properties, Inc. sued Killearn Partners, Inc. and Ted Liberty, the vice-president of Killearn. Southeast sought to recover under theories of breach of contract, procuring cause, quantum

meruit and fraud. Citing the Georgia Brokerage Relationships in Real Estate Transactions Act (BRRETA) codified at OCGA § 10-6A-1 et seq., Killearn filed a motion for judgment on the pleadings or, in the alternative, to dismiss for failure to state a claim upon which relief may be granted, contending that the lack of a written brokerage contract barred Southeast's action as a matter of law. After Killearn submitted evidence outside the pleadings, the trial court converted Killearn's motion to one for summary judgment. The court denied summary judgment, but certified the case for immediate review. We granted interlocutory review to decide whether BRRETA, as amended in 2000, forecloses other causes of action filed by a broker when no written engagement agreement has been executed. We find that BRRETA does not do so and affirm.

This case arises from Southeast's claim to a substantial real estate commission on Killearn's acquisition of certain real property in south Fulton County. Southeast claimed that it "acted as agent and representative of, and on behalf of, Defendant Killearn in procuring the transaction regarding the development of the Bear Claw Property." Southeast asserted that it had an understanding with Killearn under which Southeast would provide real estate brokerage services to Killearn in exchange for "an amount not less than Seven Percent (7%) of the value of the joint venture . . . for the Bear Claw Property transaction." In claiming a right to a commission, Southeast asserted that it had acted as Killearn's real estate agent in pursuing the transaction and by undertaking significant professional services on Killearn's behalf, including performing an assessment of the feasibility of Killearn's acquisition of the property in south Fulton.

Despite entering factual findings that "there was no written contract between the parties," and no brokerage engagement as defined by OCGA § 10-6A-3 (4),[1] the trial court denied summary judgment to Killearn. The court rejected Killearn's argument that without a written brokerage engagement, there can be no agency relationship in a real estate brokerage context. The court also found that Southeast "acted in a real estate agency relationship with Killearn, its clients, and performed acts which were greater than ministerial acts; thus, [Southeast] was not a transaction broker."

In its sole claim of error, Killearn contends that the trial court misinterpreted and misconstrued BRRETA. Killearn argues that BRRETA, as amended, precludes Southeast from recovering any compensation. Killearn claims that a written contract is a mandatory prerequisite to the creation of a brokerage engagement, so that "in order for a broker to recover a real estate commission, there must

---

[1] Southeast did not appeal these findings.

exist a written contract establishing the broker's compensation structure." Killearn argues that by amending the statutory definition of "broker engagement" to mean only a "written contract," the legislature effectively eliminated a broker's recovery of compensation where there is no written contract, regardless of whether the broker was the procuring cause of the transaction or otherwise had a viable quantum meruit claim. We disagree.

On issues of law, we owe no deference to the ruling of a trial court.[2] In construing a statute, a court must look first to the literal meaning of that statute.[3] When the statutory language is clear, unambiguous, and does not lead to any absurd or impractical consequences, we must construe the statute according to its terms and refrain from further inquiry.[4] Even when the statutory language seems ambiguous, *"we must look, where possible, to the original act; the language of the section should be construed as intending to state the previously existing law and not to change it unless such a purpose clearly manifests itself."*[5] In addition, the General Assembly is presumed to enact statutes "with full knowledge of the existing condition of the law," including judicial decisions, other statutes, the common law, and the constitution.[6]

Here, at issue is the meaning of part of BRRETA, a statute regulating the relationship between real estate brokers and the purchasers and sellers of real estate. The apparent purpose of BRRETA was to codify the "duties" owed by a real estate broker to a landlord, buyer, seller, or tenant and to codify a broker's responsibilities to clients and customers.[7] BRRETA is a statute in derogation of the common law,[8] and it is axiomatic that statutes adopted in derogation of the common law "must be strictly construed and [not] extended beyond their plain and explicit terms."[9] And, "unless the contrary manifestly appears from the words employed, the language of a code section should be understood as intending to state the existing law[,]

---

[2] *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

[3] *Diefenderfer v. Pierce*, 260 Ga. 426 (396 SE2d 227) (1990).

[4] Id. at 426-427.

[5] (Citation omitted; emphasis supplied.) *Amica Mut. Ins. Co. v. Bourgault*, 263 Ga. 157, 159 (1) (429 SE2d 908) (1993).

[6] (Citations and punctuation omitted.) *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 93 (1) (327 SE2d 188) (1985).

[7] See Pamela G. Sullivan, Peach Sheet, Commerce and Trade, 10 Ga. St. U. L. Rev. 23 (1993) (discussing enactment of new statute delineating duties of brokers).

[8] See *Lifestyle Family, L.P. v. Lawyers Title Ins. Corp.*, 256 Ga. App. 305, 310 (2) (568 SE2d 171) (2002).

[9] (Citations and punctuation omitted.) *DeKalb County v. Post Apt. Homes*, 234 Ga. App. 409, 410 (1) (506 SE2d 899) (1998).

and not to change it."[10]

Before the legislature revised BRRETA in 2000, the statute defined "brokerage engagement" as an " 'express written or oral contract wherein the client promises to pay the real estate broker a valuable consideration . . . in consideration of the broker producing a [seller] . . . ready, able, and willing to [sell] . . . the property.' "[11] As amended and made effective July 1, 2000, the legislature changed the definition of "brokerage engagement" by substituting the words "written contract" in place of "express written or oral contract."[12] Thus, as of July 1, 2000, brokerage engagements had to be in writing to fit within the ambit of BRRETA. Under the 2000 amendment, OCGA § 10-6A-3 (4) states that a broker owes the client or customer only the duties set forth in BRRETA unless the parties expressly agree otherwise in writing. Correspondingly, the 2000 amendment to BRRETA requires a brokerage engagement to be in writing. Thus, BRRETA establishes the duties a broker owes a client or customer unless the parties otherwise agree on different duties (which agreement could be oral prior to 2000, but now must be in writing). BRRETA does not, however, address the client or customer's obligation to pay the broker for services rendered. Nothing in the text of BRRETA indicates that the legislature specifically intended to foreclose the availability of remedies outside of BRRETA, including statutory remedies and those long recognized at common law.[13]

At common law, the "procuring cause" doctrine may apply when there is no express contract governing the conditions under which a commission is to be paid.[14] A broker or agent makes out a prima facie case of procuring cause by showing "that negotiations for the sale were set on foot through his efforts, that he performed every service required by his employment which it was possible to perform, and that the failure on his part to personally consummate the trade was due to the interference of the defendant."[15] Similarly, when there is no express contract, a broker may be able to recover payment for the value of his services in quantum meruit under an implied contract

---

[10] (Citation and punctuation omitted.) *Bd. of Assessors of Jefferson County v. McCoy Grain Exchange*, 234 Ga. App. 98, 100 (505 SE2d 832) (1998).

[11] (Citations omitted.) *Lifestyle Family*, 256 Ga. App. at 308 (1), n. 2.

[12] OCGA § 10-6A-3 (4).

[13] See, e.g., *D. L. Stokes & Co. v. McCoy*, 212 Ga. 78 (2) (90 SE2d 404) (1955) (Supreme Court held that the then-existing statutory laws that licensed and regulated brokers did not prevent recovery under an implied obligation to pay, where the beneficiary accepted the broker's services and such services were not unlawful).

[14] *B & R Realty v. Carroll*, 245 Ga. App. 44, 45 (2) (a) (537 SE2d 183) (2000) (physical precedent only).

[15] (Footnote omitted.) *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 596-597 (11) (533 SE2d 136) (2000).

theory.[16] In quantum meruit, a broker may obtain the value of his services, despite not being the procuring cause of the sale.[17] The measure of recovery in quantum meruit is the reasonable value of the services rendered to the party who accepted them.[18] And, as recognized by statute, "[o]rdinarily, when one renders service . . . which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof."[19]

When this court decided *Lifestyle Family*, BRRETA defined "brokerage engagement" as requiring an "express written or oral contract." Even so, *Lifestyle Family* made clear that the recovery of a brokerage commission was not foreclosed under theories of quantum meruit or procuring cause, even in the absence of an express oral or written contract. In fact, in *Lifestyle Family*, this court explicitly rejected the argument that BRRETA "eviscerates a broker's right to recover commissions under any common law theory except breach of an express contract."[20] Similarly, in *Perimeter Realty*, a case decided after the enactment of BRRETA in 1993, this court held that notwithstanding the lack of an express oral or written contract between the brokers and the defendants, a jury needed to decide the brokers' claims for a commission in quantum meruit and as the procuring cause of the transaction.[21]

"[A] civil statute which is in derogation of common law must be strictly construed or limited strictly to the meaning of the language employed and not extended beyond plain and explicit terms."[22] But, nothing in the plain and explicit terms that the legislature employed in BRRETA precludes a broker from recovering under the common law. Nor does the text of BRRETA, as amended in 2000, manifest a clear intent to alter the common law and to eliminate a broker's recovery under all causes of action except breach of a written brokerage engagement contract.[23]

> Being in derogation of common law, the scope of [BRRETA] must be limited in strict accordance with the statutory language used therein, and such language can never be

---

[16] *Mintz v. Barlow*, 241 Ga. App. 860, 863 (2) (528 SE2d 306) (2000).

[17] *Christopher Investment Properties v. Cox*, 219 Ga. App. 440, 444 (2) (465 SE2d 680) (1995).

[18] See id.

[19] OCGA § 9-2-7.

[20] *Lifestyle Family*, 256 Ga. App. at 309-310 (2).

[21] *Perimeter Realty*, 243 Ga. App. at 597 (11).

[22] (Citation and punctuation omitted.) *Denton v. Browns Mill Dev. Co.*, 275 Ga. 2, 4, n. 1 (561 SE2d 431) (2002).

[23] See *Amica Mut. Ins. Co.*, supra.

extended beyond its plain and ordinary meaning. The express language of the Act will be followed literally and no exceptions to the requirements of the Act will be read into the statute by the courts.[24]

In arguing that BRRETA manifests an intent to alter the common law, Killearn asks this court to construe the scope of BRRETA broadly, not strictly. Pointing to the revised definitions of "brokerage engagement" and "agency" and to certain legislative findings, Killearn argues that the legislature intended to foreclose a broker's recovery at common law. But, in redefining a "brokerage engagement" to mean a written contract rather than "an express written or oral contract," the legislature did not address the availability of remedies at common law.

Similarly, in revising the definition of agency, BRRETA is silent as to the concept of agency at common law. Before 2000, BRRETA defined agency to mean "every relationship in which a real estate broker acts for or represents another as a client by the latter's express authority in a real property transaction." Consistent with the revised definition of brokerage engagement in BRRETA, the legislature redefined agency to require "written authority" instead of "express authority." Even so, nothing in BRRETA as amended in 2000 expressly forecloses remedies outside of BRRETA.

Killearn also quotes at length from OCGA § 10-6A-2, entitled "[l]egislative findings, determinations, and declarations; chapter as basis for private rights of actions and defenses," a section that first appeared in BRRETA in 1993 and has remained substantially unchanged.[25] As enacted in 1993, subsection (a) of OCGA § 10-6A-2 stated in pertinent part:

> The General Assembly finds, determines, and declares that application of the common law of agency to the relationships between real estate brokers and persons who are sellers, buyers, landlords and tenants of rights and interests in real property has resulted in misunderstandings and consequences that have been contrary to the best interests of the public.

---

[24] (Punctuation and footnotes omitted.) *Tolbert v. Maner*, 271 Ga. 207, 208 (1) (518 SE2d 423) (1999).

[25] See Ga. L. 1993, p. 376, § 1.

In enacting the 2000 revisions to BRRETA, the legislature did not alter the substance of these earlier findings, and it must be presumed that the legislature acted "with full knowledge of the existing condition of the law,"[26] prior to enacting changes to BRRETA in 2000.

> In interpreting statutes, we seek to determine the legislature's intent. However, our inquiry must also include an examination of the court's interpretation of the statute because the applicable rules of statutory construction provide that once the court interprets the statute, the interpretation has become an integral part of the statute.[27]

Between BRRETA's inception in 1993 and the 2000 amendments, BRRETA did not preclude causes of action at common law or under other statutes, including OCGA §§ 9-2-7 and 10-6-32. Between 1993 and 2000, neither this court nor our Supreme Court ever construed BRRETA to limit a broker's right of recovery to breach of express contract, either oral or written. Killearn points to nothing in the text of BRRETA, as amended in 2000, that manifests a clear intent by the legislature to effectuate a contrary result.[28] Nothing in the text of BRRETA provides for BRRETA to be the exclusive remedy. Therefore, consistent with our decisions in *Lifestyle Family* and *Perimeter Realty*, we find that, notwithstanding the absence of a "brokerage engagement" as defined under BRRETA, Southeast may, nevertheless, recover, for the value of its services in quantum meruit or as the procuring cause. The trial court did not err in so finding.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MARCH 24, 2004 —

*Chamberlain, Hrdlicka, White, Williams & Martin, Gary S. Freed, William J. Piercy,* for appellants.

*Alston & Bird, Daniel N. Esrey, T. Michael Tennant, Andrew M. Gibson,* for appellee.

---

[26] (Citations and punctuation omitted.) *Peachtree-Cain Co.,* supra.

[27] (Footnote omitted.) *Stewart v. Bourn,* 250 Ga. App. 755, 758 (2) (552 SE2d 450) (2001).

[28] The legislature could have expressed a clear intent to bar a broker's recovery outside of BRRETA or to foreclose all actions at common law when there is no brokerage engagement in writing, by stating unambiguously: "Unless a promise, representation, assurance, or understanding made to a broker is entered in writing and is signed by the party to be charged, or his agent, no action shall be brought against that party by the broker under this statute, at common law, or otherwise."