John T. AMEND, Plaintiff–Appellant,

v.

485 PROPERTIES, LLC, Defendant–Appellee.

No. 04–14635
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

March 3, 2005.

Bruce Perrin Brown, Thuy N. Vu, McKenna, Long & Aldridge, LLP, Atlanta, GA, for Plaintiff–Appellant.

Jill Warner, Peter B. Glass, Kilpatrick Stockton, LLP, Atlanta, GA, for Defendant–Appellee.

Before TJOFLAT, DUBINA and GODBOLD, Circuit Judges.

PER CURIAM:

This case arises from a leasing agent's fee lost when a real estate deal was submarined by bankruptcy proceedings. The president of the leasing agent, a licensed Georgia real estate broker, negotiated the lease deal between a property company and his client. The deal fell apart when his client declared bankruptcy and the bankruptcy judge appointed another leasing agent to handle the lease negotiation. The issue before us is whether the broker has a cause of action under Georgia state law against the property company for breach of contract based on the pre-bankruptcy fee agreement or based on quantum meruit for fruitless negotiations. We agree with the district court that there is no breach of contract claim, but reserve decision on the quantum meruit claim pending the Georgia Supreme Court's decision in *Killearn Partners, Inc. v. Southeast Properties, Inc,* 266 Ga.App. 508, 597 S.E.2d 578.

In 2001 WorldCom, Inc. leased approximately 300,000 square feet in two commercial office buildings owned by 485 Properties LLC, a company controlled by a teachers' pension fund. The two office buildings are run by a separate property management company, Cousins Properties, Inc. That year 485 Properties approached WorldCom to renegotiate the leases that expired in 2003. WorldCom directed 485 Properties to deal with its leasing agent, WorkPlace U.S.A., Inc., and its president, John T. Amend, a licensed Georgia real estate broker.

In February 2002 WorkPlace and Cousins executed a fee agreement signed by Amend and Cousins as contract manager for 485 properties. The agreement provided that 485 Properties would pay WorkPlace or an "affiliate" a fee of 4.5% of the total gross rental for the term of the lease if WorldCom renewed its lease for either

of the two buildings. During this period WorkPlace and Cousins negotiated a ten-year lease for one of the buildings, Concourse VI, for WorldCom. WorldCom signed the lease in May 2002 shortly before its massive accounting implosion that summer. Once WorldCom's precarious financial situation became transparent 485 Properties refused to sign the lease. WorldCom filed for bankruptcy protection under Chapter 11 on July 21, 2002. During the bankruptcy proceedings a new leasing agent, the Hilco group of companies,[1] was appointed to handle all of WorldCom's real estate dealings.

Hilco and Cousins negotiated two five year lease agreements for WorldCom to remain in the Concourse VI building but to occupy less space. During the course of these negotiations Cousins attempted to reduce the fee arrangement with Work-Place to 2% in order to finalize the deal. In March 2003 WorkPlace was notified that 485 Properties would not pay the 4.5% fee provided for by the agreement.

In June 2003 Amend sued 485 Properties alleging a claim for breach of contract or, alternatively, quantum meruit. 485 Properties executed the new lease agreements in August 2003. The district court granted summary judgment to the 425 Properties holding that (1) the fee agreement was unenforceable because Work-Place was not a licensed Georgia real estate broker when it entered into the agreement, (2) Amend could not sue for the fee because he was not an affiliate under the agreement, (3) the explicit terms of the fee agreement precluded recovery under the fee agreement if another agent was used, and (4) Amend did not provide a benefit to 485 Properties for purposes of quantum meruit because the lease was never finalized. This appeal fol-lowed. We affirm the district court's order granting summary judgment on the contract claim. We reserve decision on the quantum meruit claim.

■ We review *de novo* a district court's order granting a motion for summary judgment and construe "all reasonable doubts about the facts in favor of the non-movant." *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990).

■ Under O.C.G.A. § 43–40–1, any person who negotiates or assists in procuring prospects for renting or leasing for any real estate or holds himself out as a referral agent for doing so, must obtain a license with the Georgia Real Estate Commission. A person cannot maintain an action for compensation for services without alleging and proving "that he was a licensed broker in Georgia at the time the alleged cause of action arose." O.C.G.A. § 43–40–24(a). Amend argues that this provision is limited to a standing analysis. In support of his position he invokes *Bryan v. Brown Childs Realty Co., Inc.* 236 Ga.App. 739, 513 S.E.2d 271, 272 (1999) in which the Georgia Court of Appeals analyzed when a broker's inactive license became active again for purposes of evaluating when "the alleged cause of action arose." *Bryan* involved a licensed broker who entered into a contract while his license was on inactive status. *See id.* Before the seller repudiated the contract (or the cause of action arose) the broker's license returned to active status. *See id.* The issue before the court was whether the broker had standing to sue for his fee. *See id.*

This is a separate question than the one the district court decided. The district court decided that because WorkPlace was

**1.** Hilco Real Estate, LLC, Hilco Industrial, LLC, New America Network, Inc. and Node Com, Inc.

an unlicensed broker who entered into a brokerage agreement the agreement was void and unenforceable. Whether Work-Place could sue was never really an issue because Amend conceded WorkPlace was unlicensed at the time the cause of action arose. The issue here is not one of standing under O.C.G.A. § 43–40–24, it is whether, as the district court held, Georgia public policy precludes enforcement of an agreement entered into by an unlicensed broker. *Bryan* does not address this point. We agree with the district court.

In *Mayo v. Lynes,* 80 Ga.App. 4, 55 S.E.2d 174, 175 (1949) the Georgia Court of Appeals stated unequivocally that "[a] contract between an unlicensed real estate broker ... and an owner of property whereby the broker agrees to sell same is void and unenforceable." Georgia courts adopted this position based upon the genesis of a law enacted in the 1920s developing a regulatory scheme for real estate brokers. The law made it " 'unlawful for any person, firm, partnership association, copartnership, or corporation ... to engage in the business ... of a real estate broker ... within any county in [Georgia] having a population of 44,195 or more [under the 1920 U.S. census]....' " *Padgett v. Silver Lake Park Corp.,* 168 Ga. 759, 149 S.E. 180 (1929).

 In an early interpretation of this law the Georgia Supreme Court held that:

the legislature intended ... to create a Georgia real estate commission which would investigate each and every person applying for a license as a corporation or individual as a real estate broker or salesman, and look into the fitness ... in respect to his character, reputation, and experience, in order to ascertain whether or not from such investigation the applicant is of good character, competent, and trustworthy, and if so, to grant him a license ... [or if finding] to the contrary ... deny such person a

license ... that being so, *it cannot be held that these acts were intended to raise revenue merely for support of the government. Padgett,* 149 S.E. at 181. (emphasis added).

Over the past century, the Court has repeatedly emphasized the statute's purpose to "provide public protection through the regulation of the activities of the brokers." *Northside Realty Assocs., Inc. v. MPI Corp.,* 245 Ga. 321, 265 S.E.2d 11, 12 (1980). Because this statute was a product of Georgia's police power to regulate real estate brokers, and not merely a device for raising revenue, contracts made by an unlicensed broker are, as the court held in *Mayo,* contrary to Georgia public policy. *See Paulsen St. Investors v. EBCO Gen. Agencies,* 237 Ga.App. 116, 514 S.E.2d 904, 906 (1999). *Cf. Mgmt. Search, Inc. v. Kinard,* 231 Ga. 26, 199 S.E.2d 899, 901 (1973). In *Paulsen* the court recapitulated the general rule applicable to this case:

[w]here a statute provides that persons proposing to engage in a certain business shall procure a license before being authorized to do so, and where it appears from the terms of the statute that it was enacted not merely as a revenue measure but was intended as a regulation of such business in the interest of the public, contracts made in violation of such statute are *void and unenforceable. Paulsen,* 514 S.E.2d at 906 (citing *Bowers v. Howell,* 203 Ga.App. 636, 417 S.E.2d 392, 393 (1992)) (emphasis added).

Accordingly, because Georgia's regulation of brokers was enacted pursuant to its police power to protect the public interest, an agreement to pay a brokerage fee entered into with an unlicensed broker is void and unenforceable under Georgia law.

 This conclusion does not end our inquiry however because "[c]ontracts void as against public policy or merely legally

unenforceable 'may be severable so that the entire contract not be void but merely unenforceable as to "that which is illegal." ' " *Bowers*, 417 S.E.2d at 394. *See also* O.C.G.A. § 13–1–8. For instance, a contract between a seller and two brokers, only one unlicensed, would not necessarily void the potentially severable contract between the licensed broker and the seller. However we hold the agreement between WorkPlace and 425 Properties cannot be severed or saved because it consists of a single, indivisible promise by WorkPlace or its affiliates to secure WorldCom as a tenant for 425 Properties in either of the two buildings it was currently occupying. *See ISS Int'l. Serv. Sys. v. Widmer*, 264 Ga.App. 55, 589 S.E.2d 820, 825 (2003) (restating the general rule "where an agreement consists of a single promise, based on a single consideration, if either is illegal, the whole contract is void"). Furthermore we hold that in the agreement between WorkPlace and 425 Properties the term "affiliates" is naturally and logically interpreted in conjunction with WorkPlace, not as a separate licensed broker. Therefore the contract between WorkPlace and 425 Properties is void and unenforceable. In light of this conclusion we need not consider whether the terms of the agreement precluded recovery under the fee agreement if another agent was used.

■ We turn now to the quantum meruit issue. Because Amend is a licensed broker without an enforceable written agreement our discussion above does not foreclose his quantum meruit claim or implied contract claim. *D.L. Stokes & Co. v. McCoy*, 212 Ga. 78, 90 S.E.2d 404, 405 (1955). In its order granting summary judgment on Amend's quantum meruit claim the district court held that Amend "fail[ed] to show that he was the procuring cause of the [lease]" because "negotiations between WorkPlace and WorldCom ceased prior" to its execution. In other words because the lease drafted by Amend and

signed by WorldCom never went into effect, Amend was owed no fee.

■ The Georgia Supreme Court has never adopted this "procuring cause" element of a quantum meruit claim. Instead, it has held that "[a] broker earns his commission when he secures a purchaser ready, willing and able to buy on the seller's terms." *Northside Realty*, 265 S.E.2d at 12. The final act of closing is not a prerequisite to the broker's right to a commission if he has secured a contract for sale. *Id.*

■ The Georgia Court of Appeals case law provides no answer to the question of whether procuring cause is an element of a quantum meruit claim. Recently the court held that without an express contract a licensed broker may recover the reasonable value of his services in quantum meruit under an implied contract theory even without being the procuring cause of the sale. *Killearn Partners, Inc. v. Southeast Properties, Inc.*, 266 Ga.App. 508, 597 S.E.2d 578, 581–82 (2004). This holding echoes a series of decisions that find quantum meruit claims without a "procuring cause" element. In *Sharp–Boylston Co. v. Lundeen*, 145 Ga.App. 672, 244 S.E.2d 622, 624 (1978) the court held that a jury should decide the merits of a quantum meruit claim where "[e]ven though the [buyer's] ultimate purchase of the [building] was not due to [the broker's] efforts, the evidence shows that it was [the broker] who procured the initial information on the building, including the name of the attorney representing the owner through whom the sale was made." Similarly, in *Futch v. Guthrie*, 176 Ga.App. 672, 337 S.E.2d 384, 385 (1985) the court upheld the jury's verdict in favor of two brokers for payment of their services under a quantum meruit theory despite the fact they were not the procuring cause of the sale. Other appellate decisions, as noted

by the district court, hold that "procuring cause" is an element of a quantum meruit claim. *See, e.g., Centre Pointe Invs., Inc. v. Frank M. Darby Co.,* 249 Ga.App. 782, 549 S.E.2d 435, 438 (2001); *Perimeter Realty v. GAPI, Inc.,* 243 Ga.App. 584, 533 S.E.2d 136, 148–49 (2000); *Allen v. T.A. Communications, Inc.,* 181 Ga.App. 726, 353 S.E.2d 569, 570 (1987). Even without the procuring cause element, if a quantum meruit claim proceeds to a jury, the jury may determine that a broker's services were of little or no value without having been the procuring cause of the lease. However resolution of this issue is important. If procuring cause is an explicit element of a quantum meruit claim instead of a limitation on recovery, brokers could find their claims dismissed before trial instead of having their recovery offset or eliminated by participation of another broker.

After the *Killearn Partners* decision the Georgia Supreme Court cast doubt on whether a quantum meruit claim could ever be maintained without a brokerage agreement in light of the Brokerage Relationship in Real Estate Transactions Act, O.C.G.A. § 10–6A. On September 8, 2004, the Court granted a writ of certiorari in that case to resolve the issue of whether "the Brokerage Relationship in Real Estate Transactions Act[ ], as amended in 2000, foreclose[s] a broker from seeking a common-law remedy (i.e.,[ ] quantum meruit) when no written engagement agreement has been executed?" The Court heard oral argument on January 24, 2005. If the Court answers the question in the affirmative, holding that a broker cannot maintain an action for quantum meruit without an agreement, its holding would doom this appeal. If the court holds that common law actions are not barred by the absence of a brokerage agreement, the decision might clarify whether "procuring cause" is an element of a broker's quantum meruit claim under Georgia law.

Consequently we will not rule on Amend's quantum meruit claim until the Georgia Supreme Court has issued its decision. Afterwards both parties are invited to file supplemental briefs with this court addressing the effect of that decision on this case within thirty days of the Georgia Supreme Court's decision.

The district court's order granting summary judgment on Amend's contract claim is AFFIRMED. We withhold decision on the quantum meruit claim and reserve ruling pending the Georgia Supreme Court's decision in *Killearn Partners, Inc. v. Southeast Properties, Inc.*