**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 9, 2020**

# In the Court of Appeals of Georgia

A19A1950. HELTON v. UNITED SERVICES AUTOMOBILE ASSOCIATION.

BARNES, Presiding Judge.

In connection with her quest for uninsured/underinsured motorist benefits, Melanie Helton appeals the grant of summary judgment to United Services Automobile Association ("USAA"). For reasons that follow, we vacate the judgment, and remand the case for proceedings not inconsistent with this opinion.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable

to the nonmovant." *Matson v. Bayview Loan Servicing*, 339 Ga. App. 890, 890 (795 SE2d 195) (2016).

So viewed, the record shows the following. The underlying automobile collision occurred on September 2, 2014, about a year after Helton and her husband moved from Kentucky to Georgia. Helton was driving her husband's truck along a road in Warner Robbins when a Buick collided into the back of the truck. In August 2016, Helton filed in the State Court of Houston County a negligence lawsuit against the Buick's driver, as well as that vehicle's owner. Helton also served her complaint on USAA as the uninsured/underinsured motorist ("UM") insurance carrier covering her husband's truck. As USAA concedes in its brief to this Court, "[a]t the time of the subject accident, Plaintiff's vehicle was insured under her husband's [USAA] policy, which provided $300,000 per person/$500,000 per accident in uninsured motorist . . . coverage."

Thereafter, in late February 2018, to recover for bodily injuries ("BI") that she sustained in the collision, Helton accepted the $25,000 limits of the State Farm Mutual Automobile Insurance Company ("State Farm") policy that covered the Buick. In reaching that settlement with the driver of the Buick, the owner of that vehicle, and State Farm, Helton executed a "Limited Liability Release Pursuant to

OCGA § 33-24-41.1." Then, to recover what she alleged remained uncompensated damages relating to the car wreck, Helton turned to USAA, relying on that policy's UM provisions.

In light of her settlement, however, USAA filed on April 13, 2018 a motion for summary judgment, contending that it had no duty to provide UM coverage to Helton. USAA cited the policy's exclusion:

> We do not provide [uninsured] or [underinsured] Coverage for BI sustained by any covered person if that person or the legal representative settles the BI claim and without submitting prior written notice of the proposed settlement by certified or registered mail to us.

As USAA posited, the policy was a "Kentucky automobile insurance policy," that Helton's husband had entered into the contract for automobile insurance when he lived in Kentucky, that the policy was thus governed by Kentucky law, and that the cited exclusion was an incorporation of Kentucky statutory law that:

> If an injured person or, in the case of death, the personal representative agrees to settle a claim with a liability insurer and its insured, and the settlement would not fully satisfy the claim for personal injuries or wrongful death so as to create an underinsured motorist claim, then written notice of the proposed settlement must be submitted by certified or registered mail to all underinsured motorist insurers that provide coverage. . . .

3

KRS § 304.39-320 (3).

In opposing USAA's summary judgment motion, Helton made no assertion that she had given notice in compliance with the cited policy provision and/or Kentucky law. Instead, she advanced numerous arguments that the policy exclusion did not operate to preclude her from obtaining UM benefits. Among her arguments, Helton contended that Georgia law governed the USAA policy, because "the policy at issue was delivered to Georgia, not Kentucky." Helton relied on *O'Neal v. State Farm Mut. Automobile Ins. Co*. 243 Ga. App. 756, 757 (1) (533 SE2d 781) (2000), for the general proposition that "[u]nder the Georgia conflict of laws rules the place of delivery of the insurance contract controls." Helton further pointed to evidence that as of the date of the accident, she and her husband had moved to Georgia; and that as of that date, the most recent declarations page for the USAA policy listed as the "Named Insured and Address" her husband's name and their initial Georgia residence.

Another argument advanced by Helton was that, even if Kentucky law applied to the policy generally, Georgia law nevertheless governed the specific issue raised by USAA's motion. Helton relied on *Newstrom v. Auto-Owners Ins. Co*., 343 Ga. App. 576, 578 (2) (807 SE2d 501) (2017), for the proposition that "[w]hen a choice-

of-law question arises in a contract action brought in Georgia, substantive matters such as the validity and construction of the contract are governed by the substantive law of the state where the contract was made (or is to be performed, if that is a different state); but procedural and remedial matters are governed by the law of Georgia, the forum state." (Punctuation and citation omitted). According to Helton, the pertinent issue raised by USAA's motion was "what [she] was required to do to avail herself of her UM coverage with USAA"; and she asserted that for purposes of the forum state of Georgia (where the accident occurred and where the negligence suit had been brought), she had done what she was required to do under Georgia law (namely, OCGA § 33-24-41.1). Helton went on to oppose USAA's motion for summary judgment on grounds of lack of prejudice to USAA as the UM carrier, estoppel, public policy, and ambiguity of terms used in the insurance policy.

The trial court conducted a hearing, then granted USAA's summary judgment motion. In its order, the trial court expressly relied on *Amica Mut. Ins. Co. v. Bourgalt*, 263 Ga. 157 (429 SE2d 908) (1993), detailing as the rationale for its decision:

> [The underlying] contract for automobile insurance coverage in Kentucky [was] entitled "Kentucky Auto Policy" and explicitly

5

indicated that . . . the covered vehicle[ ] [was] to be principally garaged in . . . Kentucky. The policy was issued on Kentucky forms, used Kentucky rates, and was subject to a Kentucky surcharge and a Kentucky tax. Simply having a Kentucky insurance contract delivered to a Georgia address, on its own, is insufficient to transform a Kentucky automobile insurance policy into a Georgia automobile insurance policy. Because Kentucky substantive law applies to this automobile insurance contract, [Helton] was required to inform [USAA] in writing at least thirty days prior to the date of settlement of bodily injury claims as a prerequisite to recovering uninsured motorist benefits. K.R.S. § 304.39-320. Because [Helton] failed to comply with the settlement notice provision as required by the policy and Kentucky law, USAA has no duty to provide uninsured motorist coverage.

Seeking reprieve from the summary judgment entered against her, Helton submits on appeal the multitude of arguments she raised below.

1. Helton contends that the trial court erred by rejecting her argument that, because the policy was "delivered" in Georgia, the policy is governed by Georgia law. She points to undisputed evidence that at the time of the car wreck, she and her husband were Georgia residents and that the most recent renewal declarations page of the USAA policy had been mailed to him in Georgia.

This argument falls short of demonstrating reversible error. In the case relied upon by the trial court, *Amica Mut. Ins. Co.*, the Supreme Court of Georgia held that

6

an automobile liability policy – which insured vehicles that were to be principally garaged in New York, and "which was issued in New York pursuant to and as required by New York law, on New York forms, used New York rates, which reflect[ed] the actual risks and costs of automobile operation in New York, for the calculation of the insurance premiums" – was thus governed by New York law. Id. at 160-161 (2). Pertinent here, the Supreme Court so held – notwithstanding that the New York insurance policy had been purchased by Georgia residents and delivered to them in Georgia. Id. at 158. As the Supreme Court discerned, it was "reasonable for the parties to assume that New York was the principal location of risk," and thus "more reasonable for the parties to expect that New York law rather than Georgia law would be determinative." Id. at 160 (2). Further, the Supreme Court explained that applying Georgia law under the facts of that case "would be unfair and would deprive insurance companies of the degree of certainty necessary for *determining the cost and extent of coverage*." Id. at 161 (2) (emphasis supplied).

Notably, the trial court remarked at the summary judgment hearing while considering the policy at issue in this case,

> . . . this being a Kentucky contract, Kentucky rates, everything is Kentucky, Kentucky, Kentucky. And then [the Heltons] move and all

7

they do is change the address for the delivery of the dec sheet, which in theory, you could be on vacation, call USAA and say, hey, could you send me the dec sheet, we're on vacation in Idaho? Sure, we'll send it to Idaho. That doesn't affect the choice of law any more than in this incidence.

Given the circumstances of the instant case, and in light of *Amica Ins. Mut.*, we conclude that this particular argument – that because the policy was "delivered" in Georgia,[1] the policy is governed by Georgia law – is not a viable ground for disturbing the contested judgment.

2. Next, Helton contends that even if Kentucky law applies to the contract generally, Georgia law nevertheless governs the particular issue raised by USAA's motion. Helton maintains that the pertinent issue was what she was required to do to avail herself of her UM coverage with USAA; and that Kentucky law "does not apply to the 'procedural and remedial' matter of whether she did what she was required to do to assert a UM claim under the policy. That assessment was governed by Georgia law, and it is undisputed that [she] complied with Georgia law."

---

[1] For purposes here, we assume, but do not decide that the USAA policy was "delivered" in Georgia.

8

It appears that in granting USAA's motion for summary judgment, however, the trial court did not reach this particular argument. The order reveals that in granting summary judgment to USAA, the trial court heavily relied on *Amica Mut. Ins. Co.*, 263 Ga. 157, to find *broadly* that "Kentucky substantive law applies to this automobile insurance contract." The argument reasserted here by Helton, however, is materially distinct from the one resolved in *Amica Mut. Ins. Co.* At issue in that case was the enforceability of an exclusion that turned upon a circumstance of the automobile collision itself – more specifically, the "underinsured coverage exclusion . . . limit[ed] coverage because the insured was injured in a vehicle not covered by the policy." Id. at 157. In resolving whether that exclusion was enforceable (or whether the exclusion was barred by certain Georgia law), the Supreme Court examined the remainder of the policy to ascertain from an actuarial standpoint the risks that the parties to the policy had apparently contemplated. Id. at 160-161 (2).

The argument advanced by Helton, however, does not concern an exclusion that turns upon a circumstance of the automobile collision itself. Her argument concerns whether UM coverage is properly denied for failure to comply (*after* the collision) with a policy notice provision and/or Kentucky law – each having dual purposes of protecting the injured motorist's election to settle and the UM carrier's

9

subrogation rights.[2] Helton maintains that her compliance with OCGA § 33-24-41.1

satisfied those same concerns.[3] Thus, according to Helton, the underlying purpose of

[2] In *Malone v. Ky. Farm Bureau Mut. Ins. Co.*, 287 SW3d 656 (Ky. 2009), the Kentucky Supreme Court summarized that under K.R.S.§ 304.39-320 (3), "the UIM insurer is entitled to notice of the settlement in order to protect its subrogation rights." Id. at 658. As that Court further summarized,

> Under subsection (4) of [K.R.S.§ 304.39-320], the underinsured carrier can refuse consent, pay the amount that the tortfeasor/motorist and his carrier had agreed to pay and, after resolving the [underinsured motorist insurance] claim with its own insured . . . , seek subrogation against the underinsured driver's liability carrier and the underinsured driver himself.

Id. at 659. See generally *Coon v. The Med. Center*, 300 Ga. 722, 729 (2) (797 SE2d 828) (2017) ("As a matter of comity, a Georgia court will defer to another state's statutes, as well as its judicial decisions authoritatively interpreting those statues, in determining the law of that state.").

[3] See *Daniels v. Johnson*, 270 Ga. 289, 290 (2) (509 SE2d 41) (1998) ("The legislature enacted OCGA § 33-24-41.1 . . . to make meaningful the ability of a claimant to settle with the tortfeasor's insurance carrier while preserving his [uninsured motorist] claim."); *Whirl v. Safeco Ins. Co.*, 241 Ga. App. 654, 655 (527 SE2d 262) (1999) (recognizing that Georgia's Uninsured Motorist Act grants subrogation rights to the insurer). See, e. g., *Wade v. Allstate Fire & Cas. Co.*, 324 Ga. App. 491, 495 (751 SE2d 153) (2013) ("Under OCGA § 33-24-41.1, a party may satisfy the exhaustion requirement by accepting the limits of a tortfeasor's insurance coverage and executing a limited release of the tortfeasor and its insurer, relieving them from all liability, but retaining the right to pursue his own insurer for other available coverage, including UM coverage."); see generally *Ingram v. State Farm Mut. Automobile Ins. Co.*, __ Ga. App. __, __ (836 SE2d 215) (2019) (explaining that

the policy exclusion of preventing prejudice to USAA is *not* furthered by its enforcement in this case.[4]

We find that the trial court, however, did not reach the foregoing opposition to USAA's motion for summary judgment;[5] nor did the trial court reach additional arguments that Helton reasserts on appeal – i.e., that USAA's summary judgment motion should have been denied on grounds of estoppel, public policy, and ambiguity of terms within the insurance policy. Given these circumstances, we exercise our discretion to vacate the grant of USAA's summary judgment motion, and remand this

---

"as the party seeking subrogation, [the insurer] stood in the shoes of the injured passenger in a personal injury tort action against the defendants," and that "[the insurer's] subrogation action . . . involved an ex delicto claim sounding in tort") (emphasis omitted).

[4] See generally *Jones v. Bituminous Cas. Corp*., 821 SW2d 798, 801-802 (Ky. 1991) (enunciating that Kentucky joins the "modern trend," such that an insurer cannot withdraw coverage on the ground that a notice condition has not been met unless the insurer can show that it was prejudiced by the act of the insured; espousing that the argument – that notice clauses are essential from an actuarial standpoint to price insurance according to risk – is valid *with reference to imposing on the insurer risks which are unreasonable and unforeseeable*).

[5] Accord *Allstate Ins. Co. v. Duncan*, 218 Ga. App. 552, 552-553 (2) (462 SE2d 638) (1995) (distinguishing *Amica Mut. Ins. Co*., 263 Ga. at 157, as involving the substantive question of the validity of a policy exclusion, from the "question presented here – what a party injured by an unknown driver must do to recover from his own uninsured motorist carrier," and thus concluding that reliance upon *Amica Mut. Ins. Co*. to resolve such question was misplaced).

11

case to allow the trial court to determine in the first instance whether any of Helton's remaining arguments (as noted in this division) have merit. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (holding that appellate courts retain discretion in determining whether to apply the right-for-any-reason rule and consider alternative legal theories not addressed by the trial court, or to vacate order and remand for the trial court to consider alternative legal theories in the first instance); *Zhong v. PNC Bank, N.A.*, 334 Ga. App. 653, 655-656 (2) (780 SE2d 92) (2015) (reversing summary judgment ruling and remanding case, where ruling was based on an erroneous legal theory and the trial court did not address all arguments advanced); *Strength v. Lovett*, 311 Ga. App. 35, 44-45 (2) (b) (714 SE2d 723) (2011) (remanding question not reached by trial court); *DuPree v. South Atlantic Conference of Seventh Day Adventists*, 299 Ga. App. 352, 355 (683 SE2d 1) (2009) (remanding where "trial court did not rule upon the other grounds advanced by [party] in its motion for summary judgment").[6]

*Judgment vacated, and case remanded. Mercier and Brown, JJ., concur.*

---

[6] We make no intimation as to the final outcome of USAA's motion for summary judgment.