**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**November 30, 2012**

# In the Court of Appeals of Georgia

A12A1567. IN THE INTEREST OF L. B., a child.

RAY, JUDGE.

Vanessa Samuels (mother) appeals from an order issued by the Douglas County Juvenile Court granting permanent guardianship of her son, L. B., to her aunt, Vere Harper (great-aunt). On appeal, the mother contends that there was no showing on the record that L. B. had been adjudicated deprived, and thus the juvenile court was without authority to appoint a permanent guardian for L. B. under OCGA § 15-11-30.1. The mother also argues that the juvenile court was without authority to grant the permanent guardianship on the theory that OCGA § 15-11-30.1 requires that the child be placed in the custody of the Division of Family and Children Services ("DFCS") prior to the appointment of a permanent guardian. We disagree and affirm.

Viewed in the proper light, the record shows that in 2009, the Division of Family and Children Services became involved in L. B.'s welfare after he suffered a broken arm and a broken tooth. After the housing assistance the mother received through DFCS ended abruptly, L. B.'s mother asked his great-aunt to care for L. B. so that she could look for a job and an apartment. The great-aunt agreed, and petitioned the Probate Court of Douglas County for temporary guardianship of L. B. Several months later, L. B.'s mother attempted to remove him from his great-aunt's home, but the great-aunt did not allow her to do so and advised the Probate Court of the danger of removal. The Probate Court then transferred the case to the Juvenile Court of Douglas County on January 4, 2010, and counsel was appointed to represent the mother. During a hearing, L. B.'s mother told the trial court that she did not wish to dissolve the temporary guardianship at that time.

A deprivation action was filed by the great-aunt on August 23, 2010, and was assigned a new case number in the juvenile court. Although the record from this action is not before us, in the order awarding permanent guardianship to the great-aunt, the juvenile court noted that an adjudicatory hearing was held on September 1, 2010, and a final order finding that L. B. was deprived was entered.

On September 16, 2011, L. B.'s great-aunt filed the present action petitioning the juvenile court for permanent guardianship. At the hearing, L. B.'s mother testified that she had little contact with her son in the past eighteen months, that she had not completed the steps required in the case plan set up by the juvenile court in the deprivation action, that she had not submitted to drug tests sought by the court, and that she was living at a family member's home. The guardian ad litem testified, and after expressing concern about the lack of contact between the child and his mother and her failure to complete her case plan or submit to drug screens, she recommended that the juvenile court award permanent guardianship to the great-aunt to assure stability in L. B.'s life. Finding that it was in the best interest of the child to remain in the care of his great-aunt, the juvenile court granted her petition for permanent guardianship of L. B. L. B.'s mother appeals.

1. OCGA § 15-11-30.1 requires that a child be adjudicated deprived before a juvenile court has the jurisdiction to grant an award of permanent guardianship over that child.[1] L. B.'s mother contends that the juvenile court was without authority to

---

[1] OCGA § 15-11-30.1 (a) (2) (A) provides that "the juvenile court shall be vested with jurisdiction to appoint a permanent guardian for a child whose custody is a subject of controversy before the court as a result of an adjudication that the child is deprived . . ."

3

award permanent guardianship to the great-aunt because although the juvenile court entered an order adjudicating L. B. deprived in an earlier case with a different case number, that order was not made part of the record in the current permanent guardianship proceeding.

Despite the absence of the juvenile court's order adjudicating L. B. deprived in the present record, the juvenile court referenced the deprivation order in its order awarding permanent guardianship to the great-aunt.[2] As a general matter, a juvenile court may take judicial notice of prior proceedings and orders in the same court if it indicates on the record that it is taking judicial notice of such prior orders and the parties do not object.[3] In the present case, the juvenile court did not specifically inform the parties during the hearing or in its order that it was taking judicial notice of the prior deprivation order. However, L. B.'s mother gives us no reason to believe

---

[2] "A court may take judicial notice of records in the same court." *In the Interest of S. H. P.*, 243 Ga. App. 720, 722 (1) (a) (534 SE2d 161) (2000) (Citation and punctuation omitted.)

[3] *In the Interest of S. N. H.*, 300 Ga. App. 321, 328 (3) (685 SE2d 290) (2009) (in a proceeding on termination of parental rights, trial court was authorized to take judicial notice of orders in underlying deprivation proceeding in the same court); *In the Interest of J. A.*, 298 Ga. App. 11, 14 (1) (679 SE2d 52) (2009) (court took judicial notice of its prior findings in determining whether the children continued to be deprived and informed the parties during the hearing that it was doing so).

that any objection to taking judicial notice of the deprivation order in this case would have had any merit, nor does she identify specific evidence that she would have brought forward to challenge the earlier deprivation order.[4] For this reason, L. B.'s mother cannot show that the taking of judicial notice is reversible error.[5]

2. L. B.'s mother contends that OCGA § 15-11-30.1 (a) (2) (A) requires a child to have been placed in DFCS custody before the juvenile court is vested with the jurisdiction to appoint a permanent guardian for that child, and thus, the juvenile court erred in awarding permanent guardianship to L. B.'s great-aunt. For the reasons below, we disagree.

---

[4] *In the Interest of A. A.*, 293 Ga. App. 471, 475 (3) (667 SE2d 641) (2008) (no reversible error where father was unable to demonstrate that the juvenile court's admission of prior orders involving the child without notice was harmful in light of other evidence presented).

[5] See *In the Interest of D. W.*, 294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008) ("An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful") (footnote and punctuation omitted). As evidence that a deprivation order had not been properly entered in a prior proceeding, L. B.'s mother quotes language from the trial court's permanent guardianship order indicating that it had difficulty reconstructing the sequence of events in this case because the "attorneys did not consistently prepare orders following each hearing." However, a close reading of the juvenile court's order reveals that it was referring only to the difficulties it had in interpreting the proceedings before the probate court, before the case was transferred to the juvenile court.

OCGA § 15-11-30.1 (a) (2) (A) provides that prior to any entry of an order appointing a permanent guardian, the juvenile court shall find, among other things, "that reasonable efforts to reunify the child with his or her parent would be detrimental to the child in accordance with subsection (h) of Code Section 15-11-58 or find that the living parents or parent of the child have consented to the permanent guardianship."[6] OCGA § 15-11-58 (h) provides that

> [w]hen reviewing the determination by [DFCS] that a reunification plan is not appropriate, the court shall determine by clear and convincing evidence whether reasonable efforts to reunify a child with his or her family will be detrimental to the child and that reunification services, therefore, should not be provided or should be terminated. There shall be a presumption that reunification services should not be provided if the court finds by clear and convincing evidence that:

(1) a parent's unjustifiably failed to complete a previously ordered reunification plan, (2) the child had been removed from the home on at least two previous occasions, (3) any of the grounds for terminating parental rights set forth in OCGA § 15-11-94 (b)

---

[6] OCGA § 15-11-30.1 (A) (2) (a) (i).

exist, or (4) if reasonable efforts to reunify are deemed unnecessary under OCGA § 15-11-58 (a) (4).[7]

L. B.'s mother argues that by referencing OCGA § 15-11-58 (h)'s "reasonable efforts" analysis, which applies only to those children in DFCS custody,[8] the legislature intended to restrict OCGA § 15-11-30.1 (a) (2) (A)'s application to only those children who were in the custody of DFCS or those children whose parents consented to such an arrangement. Therefore, L. B.'s mother argues, the juvenile court was without jurisdiction to award L. B.'s great-aunt, a private petitioner, permanent custody under OCGA § 15-11-30.1.

When considering the meaning of a statute, we apply the following analysis:

First, courts should construe a statute to give sensible and intelligent effect to all of its provisions and should refrain, whenever possible, from construing the statute in a way that renders any part of it meaningless. Second, a court's duty is to reconcile, if possible, any potential conflicts between different sections of the same statute, so as to make them consistent and harmonious. Third, in construing language in any one

---

[7] OCGA § 15-11-58 (h) (1) - (4).

[8] See *In re J. W. K.*, 276 Ga. 314, 316 (2) (578 SE2d 396) (2003).

part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole.[9]

With these principles in mind, we note that OCGA § 15-11-58, titled "[r]eunification services," is the statute governing what services are appropriate to help reunify a child with his or her parents after the child has been placed in DFCS custody by court order.[10] As noted above, the "reasonable efforts" analysis set forth in Subsection (h) of that statute establishes the standard of proof and factors to be considered by the trial court when determining whether reasonable efforts to reunify a child with his or her parents would be detrimental to the child and thus, would not be appropriate.[11] We find that the most sensible reading of the reference to the

---

[9] (Citation omitted.) *Fulton County v. Colon*, 316 Ga. App. 883, 887, (2) (730 SE2d 599) (2012).

[10] OCGA § 15-11-58 (a) provides, in pertinent part, that "[i]f the court places custody of the child in [DFCS], the court shall also determine as a finding of fact whether reasonable efforts were made by [DFCS] to preserve and reunify families prior to the placement of a child in the custody of the Department of Human Services. . . ."

[11] The legislature has noted that in certain cases, "efforts to reunify a deprived child with his or her natural parents can be detrimental to the child, making reunification services inappropriate" and that in some circumstances, reunification efforts can cause a child to be "caught in the system for years" and prevent "children from backgrounds of neglect and abuse [from being placed in] a permanent, stable adoptive home." COURTS Juvenile Proceedings, Parental Rights: Provide Guidance

8

"reasonable efforts" analysis in OCGA § 15-11-30.1 (a) (2) (A) (i) indicates that the legislature's intent was not to restrict the juvenile court's jurisdiction to appoint a permanent guardian for only those children in DFCS custody, but rather to provide the juvenile court with the standard of proof and factors to consider when determining if reunification services would be detrimental to the child, and thus an award of permanent guardianship would serve the best interests of the child.

Further, "it is elementary that in all interpretations of statutes, the courts shall look diligently for the intention of the legislature" and such intent shall be determined from a consideration of the entire statute."[12] Other subsections of OCGA § 15-11-30.1 reveal that the legislature did not intend to restrict the juvenile court's jurisdiction to appoint a permanent guardian to only those children in DFCS custody. Subsection (a) (2) (F) of OCGA § 15-11-30.1, which sets forth the requirements of pleading a petition for the appointment of a permanent guardian, clearly contemplates a petition filed by a private party. In pertinent part, subsection (a) (2) (F) provides that

---

for Reunification of Termination of Parental Rights," *Georgia State University Law Review*, Vol. 13, Iss. 1, Article 27, 93 (1996) (footnotes omitted).

[12] (Citation and punctuation omitted.) *Dept. of Human Resources v. Hutchinson*, 217 Ga. App. 70, 72 (1) (456 SE2d 642) (1995).

"[t]he petition for the appointment of a permanent guardian . . . shall set forth: . . . (iii) The name, address, and county of domicile of the petitioner and the petitioner's relationship to the child, if any, and, *if different from the petitioner*, the name, address, and county of domicile of the individual nominated by the petitioner to serve as guardian and that individual's relationship to the child, if any.

This Court must construe a statute "to make all its parts harmonize and to give a sensible and intelligent effect to each part."[13] The interpretation L. B.'s mother advocates would have us ignore the language of subsection (a) (2) (F), which clearly contemplates that a private petitioner can file a pleading seeking permanent guardianship of a child.

Further, OCGA § 15-11-30.1 (F) (iv)[14] requires that such a private petitioner include in his or her pleading a statement indicating that reasonable efforts to reunify the child with his or her parents would be detrimental to the child. It would make no

---

[13] (Citation and punctuation omitted.) *Rock v. Head*, 254 Ga. App. 382, 384 (2) (562 SE2d 768) (2002).

[14] OCGA § 15-11-30.1(a) (2) (F) (iv) provides, in pertinent part, that "[t]he petition for the appointment of a permanent guardian . . . shall set forth: (iv) [a] statement that: (I) [r]easonable efforts to reunify the child with his or her parent would be detrimental to the child in accordance with subsection (h) of Code Section 15-11-58 or that the living parents or parent of the child have consented to the permanent guardianship. . ."

sense to require a private petitioner to allege and prove that reunification efforts would be detrimental to the child if the legislature intended DFCS to shoulder that burden. Accordingly, this confirms our conclusion that there is no requirement that a child must be placed in DFCS custody prior to the appointment of a permanent guardian under OCGA § 15-11-30.1.

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*