**WHOLE COURT**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A1989. AGNES SCOTT COLLEGE v. HARTLEY.

RAY, Judge.

This case arises from an investigation of an alleged assault involving a student of Agnes Scott College (hereinafter, "ASC"), in DeKalb County, Georgia, which resulted in Amanda Hartley's arrest for aggravated and sexual battery, sexual battery, and simple battery. After the District Attorney dropped the charges, Hartley filed suit against ASC and three of its campus policemen, Gaetano Antinozzi, Gregory Scott, and Henry Hope (collectively, "Defendants"). In her complaint, Hartley raised claims for false arrest, false imprisonment, intentional infliction of emotional distress and punitive damages. Defendants moved to dismiss Hartley's complaint for lack of subject matter jurisdiction due to official immunity and failure to state a claim. Following a hearing, the trial court denied Defendants' motion to dismiss. This Court

granted Defendants' application for interlocutory appeal. For the reasons that follow, we reverse the trial court's decision.

"On appeal, this Court reviews the denial of a motion to dismiss de novo. However, we construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor." (Citation and punctuation omitted.) *Ga. Dept. of Community Health v. Data Inquiry, LLC*, 313 Ga. App. 683 (722 SE2d 403) (2012).

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof, and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citation omitted.) *Smith v. Germania of America*, 249 Ga. App. 587, 588 (1) (549 SE2d 423) (2001).

So viewed, the abbreviated record on the motion to dismiss shows that an ASC student reported that Harley sexually assaulted her in her ASC dorm room. The student made the initial report to Scott, who informed Antinozzi. Antinozzi conducted a further investigation. However, the complaint alleges that Antinozzi, Scott and

2

Hope failed to make a reasonable effort to corroborate or investigate the student's allegations.

Hartley's complaint alleges that a "reasonable investigation" would have established that Hartley was not at the student's dorm at the time of the alleged assault. Rather, she was in Knoxville, Tennessee, at the time in question. The complaint further alleges that a "reasonable investigation" would have revealed that ASC's dorm logs show that Hartley had never been in the student's dorm and that no independent witness could testify that they had ever seen Hartley there. Two days after the reported assault, Antinozzi sought arrest warrants for Hartley on charges of aggravated sexual battery, battery, and sexual battery.

Upon obtaining arrest warrants against Hartley, Antinozzi contacted the Knoxville Police department and initiated proceedings resulting in Hartley's arrest in Tennessee, and her extradition to DeKalb County, Georgia. At a subsequent hearing, Antinozzi reiterated the charges made by the ASC student, but produced no witnesses or physical evidence. The District Attorney dropped all of the charges against Hartley after she presented evidence showing that she was not in Georgia at the time of the alleged offenses.

Hartley then filed this action against the Defendants and ASC. Hartley asserted that all three campus policemen were acting within the scope of their employment as members of ASC's Department of Public Safety at all relevant times and that Hope was responsible for ensuring that allegations of criminal conduct at ASC were properly investigated. Hartley further asserted that ASC and the campus policemen breached their legal duty not to falsely arrest or imprison her; that their conduct constituted intentional infliction of emotional distress; and that their conduct entitled her to recover punitive damages.

Defendants filed their answer and denied liability. Defendants then moved to dismiss Hartley's complaint, contending (1) that the trial court lacked subject matter jurisdiction, because the campus policemen are law enforcement officers who were acting within the scope of their official duties and, thus, were immune from liability; and (2) that Hartley failed to state a claim against ASC, because a private employer of "special policemen" is not vicariously liable for the policemen's actions in furtherance of their public duties.

In denying their motion to dismiss, the trial court found that the campus policemen were not State officers or State employees under OCGA § 50-21-22 (7), and that they were not otherwise entitled to official immunity. The trial court

4

specifically found that, although the campus policemen had law enforcement powers, they were not "law enforcement officers" acting on behalf or in the service of the State as defined by OCGA § 50-21-22 (7). The trial court also found that Hartley stated a claim against ASC because the complaint showed that the campus policemen were acting within the scope of their employment for ASC when they committed the allegedly tortious acts.

1. On appeal, Defendants contend that the trial court erred in finding that law enforcement officers employed by private colleges and universities are not immune from suit under The Georgia Tort Claims Act ("GTCA"), OCGA § 50-21-20, et seq. We agree that, under the facts of this case, the police officers were entitled to immunity.

> The Georgia Constitution provides that sovereign immunity extends to the State and all of its departments and agencies, and that the State's sovereign immunity can only be waived by a constitutional provision or an Act of the General Assembly that specifically provides for such waiver and the extent thereof. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

(Citations, punctuation, and footnote omitted.) *Data Inquiry*, supra at 685 (1). The GTCA provides that State officers or employees who commit torts while acting

5

within the scope of their official duties or employment are not subject to lawsuit or liability for those acts. See OCGA § 50-21-25 (a). Defendants argue that the campus policemen are entitled to immunity because they are law enforcement officers within the meaning of OCGA § 50-21-22 (7). The issue of whether the campus policemen were entitled to immunity under the GTCA is a question of law which requires this Court to determine whether they are State employees. See *Hardin v. Phillips*, 249 Ga. App. 541, 543 (1) (547 SE2d 565) (2001).

The GTCA definition of "State officer and employee" includes, in pertinent part,

> an officer or employee of the [S]tate, elected or appointed officials, *law enforcement officers*, and *persons acting on behalf or in service of the state in any official capacity*, whether with or without compensation, but the term does not include an independent contractor doing business with the state. . . . *Except as otherwise provided for in this paragraph*, the term shall not include a corporation whether for profit or not for profit, or any private firm, business proprietorship, company, trust, partnership, association, or other such private entity.

OCGA § 50-21-22 (7).

In the Campus Policemen Act, OCGA § 20-8-1, et seq., the legislature defines campus policemen as employees of educational facilities and vests campus policemen

6

who have been certified as peace officers with "the same law enforcement powers, including the power of arrest, as a law enforcement officer of the local government with police jurisdiction over such campus." OCGA § 20-8-2. That Act defines a "campus policeman" not as an employee who owes a duty solely to the private institution that employs him, but rather as an officer "whose duties include the enforcement of the laws of this [S]tate; the preservation of public order; the protection of life and property; the prevention, detection, or investigation of crime; or any combination thereof." OCGA § 20-8-1 (2).

Construing OCGA § 50-21-22 (7) with the Campus Policemen Act, OCGA § 20-8-1, et seq.,[1] demonstrates the General Assembly's intent to include law enforcement officers employed by private colleges and universities within the definition of "State officer[s] and employee[s]" who are granted immunity under the GTCA because it imbues them with the power to do what is necessary to enforce the laws of this State and imposes upon them a duty to enforce State law and to

_____

[1] See *State v. Davis*, 246 Ga. 761, 761-762 (1) (272 SE2d 721) (1980) (the meaning and effect of statutes will be determined in reference to other statutes); *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1, 9 (3) (178 SE2d 868) (1970) (the meaning and effect of a statute are "to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts") (citation omitted).

investigate any violation thereof. When a campus policeman exercises his statutorily authorized "law enforcement powers" within his defined jurisdiction "[o]n the campus of an educational facility,"OCGA § 20-8-2, then necessarily, he is "acting on behalf of or in service of the [S]tate in an [] official capacity," and hence, he is a state officer under OCGA § 50-21-22 (7).

In the present case, although the Defendant campus policemen were employed by ASC, the facts in the complaint do not state that they were acting in furtherance of ASC's interests at the time of the investigation of the reported assault and the subsequent arrest of Hartley.[2] The allegations in the complaint, taken as true, merely allege that the Defendants involved in this case were engaged in police functions involved in upholding the laws of the State and investigating an alleged crime. It follows, therefore, that in fulfilling their "law enforcement powers" granted by

---

[2] The pertinent allegations in the complaint state that an ASC student falsely claimed to two ASC police officers that she had been raped in her dorm room, the officers "took" those claims "without a reasonable degree of skepticism or investigation," and "[r]ather than investigate the veracity of . . . [Appellee's] false allegations . . . [one of the ASC officers] immediately proceeded to obtain criminal arrest warrants against" Hartley, and once the warrants were obtained, the ASC officers "immediately contacted the Knoxville Police Department and initiated proceedings to cause the arrest of [Hartley]."

OCGA § 20-8-2, they were "acting on behalf or in service of the state in an[] official capacity," and thus, they are "state officer[s]" under OCGA § 50-21-22 (7).[3]

Further, "it is elementary that in all interpretations of statutes, the courts shall look diligently for the intention of the legislature and such intent shall be determined from a consideration of the entire statute." (Punctuation and footnote omitted.) *In the Interest of L. B.*, __ Ga. App. __ (2) (735 SE2d 162) (2012). The appellees contention that ASC's campus policemen do not fall within the statutory definition of "State officer or employee" because they are employed by ASC, a private entity, fails to take the entirety of the statute into consideration. The last sentence of OCGA § 50-21-22 (7) states that "*[e]xcept as otherwise provided for in this paragraph*, the term ["State officer or employee"] shall not include a corporation whether for profit or not for profit, or any private firm, business proprietorship, company, trust, partnership, association, or other such private entity." This language does not exclude employees of corporations or private entities, such as ASC, from the definition of "State employee or officer." To so find would require us to ignore the language in the first part of the sentence that applies the private entity exclusion only "[e]except as

_____

[3] We do not reach the issue and do not hold that law enforcement officers of private colleges and universities are entitled to immunity if their actions were solely on behalf of their employer and not engaged in upholding the laws of the State.

9

otherwise provided for in this paragraph." The first sentence of OCGA § 50-21-22 (7) clearly indicates that "law enforcement officers" and "persons acting on behalf or in service of the [S]tate in any official capacity" are not to be excluded, even if associated with such a private entity.

The trial court and appellees rely upon *The Corporation of Mercer University v. Barrett & Farahany, LLP*, 271 Ga. App. 501 (610 SE2d 138) (2005) for the assertion that the mere fact that campus police officers are given authority to perform certain functions under the Campus Policeman Act does not make them State officers or employees. However, this case is inapposite. In *Mercer*, this Court looked to the plain language of the Open Records Act, OCGA § 50-18-70, et seq., and held that the police department of Mercer University, a private institution, was not a "public agency" or "public office" and, therefore, was not required to comply with the provisions of the Georgia Open Records Act. *Mercer*, supra at 502-504 (1) (a). The Open Records Act defines a public "agency" as an entity that (1) is a political subdivision of the state, (2) is a city, county, regional or other authority established by law, or (3) receives a specified percentage of money from the State. See OCGA § 50-18-70 (b) (1); OCGA § 50-14-1 (a) (1). It was undisputed that Mercer, as a private university, clearly did not fall within the statutory definition of a public

10

"agency" subject to the Open Records Act. However, in contrast, in the present case, the Defendants as law enforcement officers and as employees working on behalf of or in service of the State clearly fall within the definition of "State official or employee" under the GTCA. Further, in direct response to this Court's holding in *Mercer*, the legislature acted promptly to counteract this Court's interpretation of the Open Records Act and enacted OCGA § 20-8-7 in 2006, which requires campus police departments, public or private, to make records related to the investigation of criminal conduct and crimes available for public inspection and copying. This legislation effectively reversed the *Mercer* decision and further strengthens the conclusion that the Defendants, as campus law enforcement officers, are acting on behalf of the State when they investigate crimes and uphold the laws of this State.

Further, the trial court and the appellee's reliance upon *Nichols v. Prather*, 286 Ga. App. 889, 893 (1) (650 SE2d 380) (2007) in support of the contention that not every law enforcement officer, regardless of his employer, is a State officer is not applicable to the case at hand. The *Nichols* case held that sheriffs were not entitled to immunity under the GTCA because the GTCA specifically excludes "counties and other units of local government" from its definition of "State," and the Georgia Constitution defines sheriffs as "county officers." Id. at 893 (1). See OCGA § 50-21-

11

22 (5); Ga. Const. of 1983, Art. IX, Sec. I, Par. III (a). In this case, there is no similar Constitutional or statutory basis for the exclusion of campus law enforcement officers from the GTCA's provision of immunity.

Construing the OCGA § 50-22-21 (7) definition of "State officers and employees" to include campus law enforcement officers acting to enforce and uphold the laws of this State, regardless of whether they are employed by a private or state college or university, serves legitimate public policy reasons as well. The rationale behind the statutory doctrine of qualified immunity is "to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight." (Footnote omitted.) *Taylor v. Campbell*, __ Ga. App. __ (Case No. A12A1783, decided on March 14, 2013). Without immunity, law enforcement officers can be sued in their individual capacities for actions taken as part of their official duties, resulting in a reluctance to exercise the full extent of their authority for fear of retribution in the form of civil litigation. Campus law enforcement officers charged with enforcing the laws of this State should not face the risk of retribution for engaging in law enforcement activities simply because they are employed by a private educational institution. The dissent's holding creates an incentive for private colleges and universities to disband their private police forces,

12

which serve a function that would otherwise be the responsibility of state and local governments.

Based upon the above analysis, we find that the trial court erred in denying the Defendant's motion to dismiss.

2. Appellants contend that the trial court erred in denying ASC's motion to dismiss Hartley's claims for respondeat superior. We agree.

It is well-established under Georgia law that a private employer is not responsible under respondeat superior for the tortious acts of its police officer employee if that police officer was performing public duties, not at the direction of the employer, while committing the tort in question. See *Pounds v. Central of Ga. R. Co.*, 142 Ga. 415 (83 SE 96) (1914) (railroad company not vicariously liable for tort committed by police officer on its payroll because police officer was acting in furtherance of his duties as a policeman when committing the alleged tort, and not at the railroad's direction); *Touchton v. Bramble*, 284 Ga. App. 164, 165-166 (1) (a) (643 SE2d 541) (2007) (amusement park not subject to liability in respondeat superior for actions of its employee, an off-duty police detective, who was investigating an incident at the park when the amusement park did not direct the investigation or control his actions during the investigation).

A motion to dismiss should "only be granted if the allegations of the complaint, construed most favorably to the plaintiff, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." (Citation omitted.) *Thomas v. Lee*, 286 Ga. 860, 861 (691 SE2d 845) (2010). Construing the pleadings in the light most favorable to the plaintiff, we note that the only language connecting the Defendant's alleged tortious conduct to ASC is an allegation in the Complaint that the Defendants were "employees of [ASC], acting within the line and scope of their authority, and in particular were acting as members of the Department of Public Safety of [ASC]." There is no indication in the complaint that ASC was involved in or directed their conduct in investigating the alleged assault or initiating the judicial process with respect to that claim. Accordingly, we find that the trial court erred in denying ASC's motion to dismiss.

*Judgment reversed. Andrews, P. J., and Branch, JJ., concur, Boggs, J. concurs in judgment only, and Miller, P. J., Phipps, P. J., and Doyle, P. J., dissent.*

A12A1989.  AGNES SCOTT COLLEGE v. HARTLEY.

MILLER, Presiding Judge.

I respectfully dissent from Division 1 of the majority's opinion because campus policemen who are employed by private colleges and universities do not fall within the statutory definition of a State employee under the Georgia Torts Claims Act ("GTCA"), OCGA § 50-21-20 et seq.

> The Georgia Constitution [as amended in 1991] provides that sovereign immunity extends to the State and all of its departments and agencies, and that the State's sovereign immunity can only be waived by a constitutional provision or an Act of the General Assembly that specifically provides for such waiver and the extent thereof. Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e).

(Citations, punctuation and footnote omitted.) *Data Inquiry*, supra, 313 Ga. App. at 685 (1). The GTCA was enacted under the authority of the 1991 constitutional amendment. The legislative intent with respect to the state's liability is set out in OCGA § 50-21-21 (a). (Citations and punctuation omitted, emphasis supplied.) *Hilson v. Dept. of Pub. Safety*, 236 Ga. App. 638, 639-640 (512 SE2d 910) (1999). In that subsection,

the General Assembly stated its legislative intent to strike a balance between the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity and *the need to limit the exposure of the state treasury to tort liability* since in acting for the public good and in responding to the public need, *state government* must provide a broad range of services and perform a broad range of functions throughout the entire state, regardless of how much exposure to liability may be involved.

(Citation and punctuation omitted, emphasis supplied.) *Ga. Forestry Comm. v. Canady*, 280 Ga. 825, 826 (632 SE2d 105) (2006).

The GTCA provides that State officers or employees who commit torts while acting within the scope of their official duties or employment are not subject to lawsuit or liability for those acts. See OCGA § 50-21-25 (a). Campus policemen Gaetano Antinozzi, Gregory Scott and Henry Hope argue that they are entitled to immunity under the GTCA because they are law enforcement officers within the meaning of OCGA § 50-21-22 (7). The issue of whether the campus policemen were entitled to immunity under the GTCA is a question of law which requires this Court to determine whether they are State employees. See *Hardin v. Phillips*, 249 Ga. App. 541, 543 (1) (547 SE2d 565) (2001).

OCGA § 50-21-22 provides the following definitions:

2

(5) "State" means the State of Georgia and any of its offices, agencies, authorities, departments, commissions, boards, divisions, instrumentalities, and institutions, *but* does not include counties, municipalities, school districts. . .and other local authorities.

(6) "State government entity" means a state office, agency, authority department, commission, board, division, instrumentality, or institution.

(7) "State officer or employee" means an officer or employee of the state, elected or appointed officials, *law enforcement officers*, and *persons acting on behalf or in service of the state in any official capacity*, whether with or without compensation, but the term does not include an independent contractor doing business with the state. The term state officer or employee also includes any natural person who is a member of a board, commission, committee, task force, or similar body established to perform specific tasks or advisory functions, with or without compensation, for the state or a state government entity, and any natural person who is a volunteer participating as a volunteer, with or without compensation, in a structured volunteer program organized, controlled, and directed by a state government entity for the purposes of carrying out the functions of the state entity. . . . Except as otherwise provided for in this paragraph, *the term shall not include a corporation* whether for profit or not for profit, or any private firm, business proprietorship, company, trust, partnership, association, *or other such private entity*.

(Emphasis provided.) OCGA § 50-21-22 (5) - (7). In construing this statute,

3

we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. At the same time, we must seek to effectuate the intent of the legislature.

(Citation and punctuation omitted.) *Currid v. DeKalb State Court Probate Dept.*, 285 Ga. 184, 187 (674 SE2d 894) (2009).

The plain language of the GTCA excludes employees of corporations or private entities, such as ASC, from the definition of State employee or officer. See OCGA § 50-21-25 (7); *Summerlin v. Ga. Pines Community Svc. Bd.*, 286 Ga. 593, 595 (1) (690 SE2d 401) (2010).[1] Moreover, this case does not involve exposure of the State treasury to tort liability. See *Canady*, supra, 280 Ga. at 826. Therefore, the campus policemen are not immune from suit under the GTCA. See *Johnson v. Ga. Dept. of Human Resources*, 278 Ga. 714, 717 (3) (606 SE2d 270) (2004) (holding that a corporate child-care facility and its employee did not fall within the statutory definition of an "employee" under the GTCA); compare *Hardin*, supra, 249 Ga. App.

---

[1] The Georgia Supreme Court's decision in *Summerlin*, supra, 286 Ga. at 593, does not support the campus policemen's argument that they are entitled to immunity under the GTCA, because that case involved health care workers who were working as borrowed servants for a *state agency*. Thus, the health care workers were working *on behalf or in service of the state* as set forth in OCGA § 50-21-22 (7).

4

at 543-544 (1) (holding that individuals employed by a public college within the State university system are State employees as that term is defined in OCGA § 50-21-22 (7)). Nevertheless, the campus policemen argue that they have law enforcement powers within the meaning of the Campus Policemen Act, OCGA §§ 20-8-1 et. seq.

This Court must construe the GTCA together with the Campus Policemen Act, and harmonize the two statutes if possible so as to give effect to legislative intent. See *Ferdinand v. Bd. of Commrs.*, 281 Ga. 643, 644 (641 SE2d 787) (2007). OCGA § 20-8-1 pertinently provides that:

> (2) "Campus policeman" means an employee of an educational facility whose duties include the enforcement of the laws of this state; the preservation of public order; the protection of life and property; the prevention, detection, or investigation of crime; or any combination thereof.[2]

---

[2] OCGA § 20-8-1 also provides that:

(1) "Campus" means the grounds and buildings owned or occupied by a college or university or the grounds and buildings of a school or training facility operated by or under the authority of the State Board of Education. The term "campus" shall also include any public or private property within 500 yards of the property of an educational facility and one-quarter mile of any public street or public sidewalk connecting different buildings of the same educational facility when the property or buildings of the educational facility are located within any county in this

5

OCGA § 20-8-2 provides that

> [o]n the campus of an educational facility, a campus policeman employed by such educational facility who is certified in accordance with Code Section 20-8-3 and when authorized by the governing body or authority of such educational facility shall have the same law enforcement powers, including the power of arrest, as a law enforcement officer of the local government with police jurisdiction over such campus.

Campus policemen are not authorized to exercise law enforcement powers unless they are certified by the Georgia Peace Officer Standards and Training Council (hereinafter "POST certified"). See OCGA § 20-8-3.

As an initial matter, we note that the complaint is silent as to whether the campus policemen are POST certified as required by OCGA § 20-8-3. Nevertheless,

---

state having a population of 400,000 or more according to the United States decennial census of 1970 or any future such census.

(3) "College or university" means an accredited, nonproprietary, public or private educational institution of higher learning located in this state.

(4) "Educational facility" means a college or university or a school or training facility operated by or under the authority of the State Board of Education.

6

even assuming that the campus policemen were properly certified, they were not State officers or employees within the meaning of the GTCA. Nothing in the Campus Policemen Act indicates that a campus policeman is considered to be a State employee. The mere fact that campus police officers are given authority to perform certain functions under the Campus Policemen Act does not make them State officers or employees.[3] See *Mercer Univ. v. Barrett & Farahany, L.L.P.*, 271 Ga. App. 501, 502-503 (1) (a) (610 SE2d 138) (2005) (holding, in the context of interpreting the Open Records Act, OCGA § 50-18-70 et. seq., that campus police officers working for a private institution were not public officers or employees, even though they had law enforcement powers under the Campus Policemen Act). Furthermore, it is clear that not every law enforcement officer, regardless of his employer, is a State officer. See *Nichols v. Prather*, 286 Ga. App. 889, 893 (1) (650 SE2d 380) (2007) (holding that, under the GTCA, a sheriff's department was not a State government entity, and a county sheriff and his employees were not State officers or employees). Regardless

---

[3] To the extent Defendants rely upon an opinion from the Office of the Attorney General providing that campus policemen are "law enforcement officers" under Georgia law that reliance is misplaced. That opinion applies to the jurisdiction and authority of university system law enforcement officers, and the university system is statutorily defined in OCGA § 20-3-50 as the University of Georgia and its branches, not private institutions, like ASC. See 1993 Op. Atty Gen. Ga. 57

7

of whether the campus policemen had law enforcement powers under the Campus Policemen Act, they were employees of a private entity, were not acting on behalf or in service of the State, and did not fall within the statutory definition of a State employee under OCGA § 50-21-22 (7). Thus, the trial court properly found that the campus policemen were not immune from suit under the GTCA.

I also dissent to the majority's opinion as to Division 2 because Hartley could show that Agnes Scott College ("ASC") is vicariously liable for the campus policemen's actions if she presents evidence that they were acting within the scope and course of their employment for ASC.

> The clearest case of vicarious liability. . . is that of a master for harm caused by acts of his servant. Under the principle of respondeat superior, employers are generally jointly and severally liable along with the tortfeasor employee for the torts of employees committed within the scope of employment. . . .When an employee causes an injury to another, the test to determine if the employer is liable is whether the employee was acting within the scope of the employee's employment and on the business of the employer at the time of the injury.

(Citations and punctuation omitted.) *Chorey, Taylor, Feil, P.C. v. Clark*, 273 Ga. 143, 144 (539 SE2d 139) (2000). The question of whether an employee is acting within the scope of his employment, and the scope of his employer's business at the time of

8

an injury to another is a jury question, except in plain and indisputable cases. See *Howard v. J. H. Harvey Co.*, 239 Ga. App. 677, 681 (5) (521 SE2d 691) (1999).

Here, the complaint alleged that the campus policemen were acting within the scope and course of their employment. Specifically, Hartley alleged that the campus policemen were ASC employees, acting within the line and scope of their employment, when they investigated the reported assault and then initiated proceedings to secure Hartley's arrest. Nevertheless, Defendants argue that ASC incurred no vicarious liability because the campus policemen were engaged in law enforcement activities that constituted a public service, not acting in furtherance of ASC's business. Defendants' argument is unavailing, because they have not shown that Hartley could not possibly present evidence that the campus policemen were ASC's employees acting within the scope of their employment. Construing the allegations in the light most favorable to Hartley, a jury could find that ASC is vicariously liable for the campus policemen's actions if Hartley proves that they were acting within the scope of their employment. See *Smith*, supra, 249 Ga. App. at 589 (holding that the owner and manager of an apartment complex could be vicariously liable for the actions of three police officers if the plaintiffs proved that the officers were employees acting within the scope of their employment).

I am authorized to state that Phipps, P. J., and Doyle, P. J., join in this dissent.

9