In the Supreme Court of Georgia

Decided:   June 16, 2014

S13G1152.  HARTLEY v. AGNES SCOTT COLLEGE et al.

NAHMIAS, Justice.

We granted certiorari to decide whether a campus police officer employed by a private college qualifies as a "state officer or employee" who may assert immunity from tort suits under the Georgia Tort Claims Act (GTCA), OCGA §§ 50-21-20 to 50-21-37.  In Division 1 of Agnes Scott College v. Hartley, 321 Ga. App. 74 (741 SE2d 199) (2013), a three-judge plurality of the Court of Appeals, joined in judgment only by another judge, examined the definition of "state officer or employee" in § 50-21-22 (7) and concluded that the defendant Agnes Scott College police officers were entitled to immunity under the GTCA and that appellant Amanda Hartley's tort lawsuit against them should therefore be dismissed.  See Hartley, 321 Ga. App. at 74-80.  After considering the GTCA as a whole, rather than only its definitions section, we disagree, because it is clear that the Agnes Scott officers were not acting for any state government

entity when they committed the alleged torts. We therefore reverse the judgment announced in Division 1 of the Court of Appeals' plurality opinion.

1. (a) This case is here on the denial of a motion to dismiss the complaint, so we will assume that the following factual allegations of the complaint are true. In the spring of 2009, Haley Maxwell was a student at Agnes Scott College in Decatur, Georgia.[1] On April 28, Maxwell reported to Lieutenants Gaetano Antinozzi and Gregory Scott of the college's Department of Public Safety that she had been beaten and brutally sexually assaulted in her dorm room during the early morning hours of April 13 by a University of Tennessee graduate student named Amanda Hartley. Maxwell also told the officers that on April 27 – two weeks after the alleged attack in her dorm room – she went alone to Hartley's apartment in Knoxville, where Hartley beat her again.

A reasonable investigation would have revealed that Maxwell's accusations against Hartley were demonstrably false. For example, the officers would have learned that the sign-in logs at Maxwell's dormitory indicated that

---

[1] It is undisputed that Agnes Scott College is a private corporation.

2

Hartley had never been there; not a single person who lived in the dorm could confirm that Hartley had ever been there; a substantial number of independent witnesses could verify that Hartley was actually in Knoxville at the time of the alleged assault in Decatur; and Hartley is a non-violent person who exhibits the utmost respect for the rights and personal safety of others. The officers also would have found evidence disproving Maxwell's claims that Hartley "controlled [her] cell phone account" and "had depleted [her] checking account," and they would have discovered that the college itself had recently investigated – and found to be false – Maxwell's bizarre claims of mistreatment by personnel at the campus health center.

Instead, on April 30, without investigating the truth or falsity of Maxwell's story, Lieutenant Antinozzi obtained warrants for Hartley's arrest on charges of aggravated sexual battery, battery, and sexual battery. He then contacted the Knoxville Police Department to cause Hartley's arrest and extradition to Georgia. Hartley was arrested and detained in Tennessee on May 6, extradited to Georgia on May 17, and not released on bond until May 28. On December 7, 2009, the district attorney dismissed all charges against Hartley after a reasonable investigation uncovered evidence showing that she was not

3

in Georgia at the time of the alleged assault in Maxwell's dorm room, making it apparent that Maxwell's accusations were wholly fabricated and false.

(b)     On April 20, 2011, Hartley filed a tort lawsuit against Agnes Scott College and three of its campus police officers – Lieutenant Antinozzi, Lieutenant Scott, and Harry Hope, the director of the college's Department of Public Safety – alleging that the three officers were acting within the scope of their employment by the college at the relevant times. The complaint sought compensatory and punitive damages based on claims of false arrest, false imprisonment, and intentional infliction of emotional distress. The officer defendants answered and filed a motion to dismiss the complaint, arguing that they were entitled to immunity under the GTCA. On March 20, 2011, the trial court denied the motion to dismiss.

The Court of Appeals reversed that ruling in a divided whole-court decision. The disagreement between the three judges who joined the plurality opinion and the three judges in dissent focused on whether a private campus police officer exercising law enforcement powers qualifies as a "state officer or employee" within the meaning of OCGA § 50-21-22 (7), entitling the officer to assert immunity under the GTCA. The seventh judge concurred in the

4

plurality's judgment only.  We granted certiorari.[2]

2.    (a)    Like the competing opinions in the Court of Appeals, the parties focus their arguments here primarily on whether the Agnes Scott police officer defendants were entitled to seek immunity under the GTCA.  Hartley contends that they could not be immune because they do not qualify as state officers or employees as defined in OCGA § 50-21-22 (7), which says in full:

> "State officer or employee" means an officer or employee of the state, elected or appointed officials, law enforcement officers, and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include an independent contractor doing business with the state. The term state officer or employee also includes any natural person who is a member of a board, commission, committee, task force, or similar body established to perform specific tasks or advisory functions, with or without compensation, for the state or a state government entity, and any natural person who is a volunteer participating as a volunteer, with or without compensation, in a structured volunteer program organized, controlled, and directed by

---

[2] The college also moved to dismiss the complaint, arguing that private employers are not vicariously liable for torts committed by their police officer employees when exercising law enforcement powers not at the direction of the employer.  The Court of Appeals plurality, again joined in judgment only by the seventh judge, concluded in Division 2 of its opinion that the college was entitled to dismissal, reversing the trial court on this issue too.  See Hartley, 321 Ga. App. at 80.  Hartley also sought review of that ruling, but our order granting certiorari did not ask the parties to address it, the parties did not do so in their briefs, and we express no opinion on it.

Amicus curiae briefs have been filed here by the Georgia Independent College Association, Emory University, the Georgia Fraternal Order of Police and the Georgia Association of Chiefs of Police, Inc., and the State of Georgia.  We appreciate these contributions to our consideration of this case.

a state government entity for the purposes of carrying out the functions of the state entity. This shall include any health care provider and any volunteer when providing services pursuant to Article 8 of Chapter 8 of Title 31. An employee shall also include foster parents and foster children. Except as otherwise provided for in this paragraph, the term shall not include a corporation whether for profit or not for profit, or any private firm, business proprietorship, company, trust, partnership, association, or other such private entity.

As the Court of Appeals plurality opinion emphasized, this definition of a "state officer or employee" expressly includes both "law enforcement officers" and "persons acting on behalf or in the service of the state in any official capacity." To determine if private campus police officers come within those phrases, the plurality looked to the Campus Policemen Act originally enacted in 1977. See OCGA §§ 20-8-1 to 20-8-7. That law defines a "campus policeman" as "an employee of an educational facility whose duties include the enforcement of the laws of this state; the preservation of public order; the protection of life and property; the prevention, detection, or investigation of crime; or any combination thereof." OCGA § 20-8-1 (2). The statute gives these officers, when they are on or near campus, "the same law enforcement powers . . . as a law enforcement officer of the local government with police jurisdiction over such campus," so long as the officers are properly certified

6

pursuant to the Georgia Peace Officer Standards and Training Act (POST Act), OCGA § 35-8-1 et seq., and "the governing body or authority of such educational facility" has authorized them to exercise law enforcement powers as part of their jobs, OCGA § 20-8-2. See Hartley, 321 Ga. App. at 76-78 (plurality opinion).

In response, the dissent highlighted the last sentence of § 50-21-22 (7), which expressly excludes corporations and other private entities, like Agnes Scott College, from the definition of "state officer or employee," contending that employees of such private entities are also excluded. See Hartley, 321 Ga. App. at 82 (Miller, P.J., dissenting). The plurality replied by noting that the sentence on which the dissent relied begins, "[e]xcept as otherwise provided for in this paragraph"; thus, if a campus police officer qualifies as a state officer or employee under the first sentence of the definitional paragraph, the fact that the officer is employed by a corporation or a private entity is irrelevant.

If OCGA § 50-21-22 (7) were all we had to go on, we would tend to agree with the plurality. But when read in the context of the statute of which that definitional provision is a part, it becomes clear that the Agnes Scott College police officers at issue are not state officers or employees protected by the

7

GTCA.

(b)     OCGA § 50-21-22 (7) does not stand alone.  Rather, it is part of the Georgia Tort Claims Act – an integrated statutory tort claims scheme whose key components were enacted contemporaneously.  See Ga. L. 1992, p. 1883.

> When we consider the meaning of a statutory provision, we do not read it in isolation, but rather, we read it in the context of the other statutory provisions of which it is a part.  "[A]ll statutes relating to the same subject matter are to be construed together, and harmonized wherever possible."

Hendry v. Hendry, 292 Ga. 1, 3 (734 SE2d 46) (2012) (citations omitted).  See also Sikes v. State, 268 Ga. 19, 21 (485 SE2d 206) (1997) ("[I]n construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole.").

The GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee . . . while acting within the scope of his or her official duties or employment."  OCGA § 50-21-25 (a).  The GTCA prohibits lawsuits directly against the state officer or employee for such torts, see OCGA § 50-21-25 (a), (b); instead, the lawsuit must be brought against "only the state

8

government entity for which the state officer or employee was acting" when he allegedly committed the tort, OCGA § 50-21-25 (b).  See Shekhawat v. Jones, 293 Ga. 468, 470 (746 SE2d 89) (2013).[3]  If the plaintiff does name the state officer or employee individually as a defendant in the complaint, "the state government entity for which the state officer or employee was acting must be substituted as the party defendant."  Id.  See also Kenneth L. Shigley & John D. Hadden, Georgia Law of Torts – Trial Preparation and Practice § 15:3 (2013 ed.) ("Prior to enactment of the GTCA, tort claims were brought against individual state employees and officials rather than the state agencies, and funds were allocated by the state to pay settlements or judgments against employees and officials within the course and scope of their duties.  The GTCA reversed this scheme, so that claims are brought against agencies rather than individual

---

[3] The lawsuit against the state government entity is authorized by the state's limited waiver of sovereign immunity in OCGA § 50-21-23 (a):

> The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article. The state shall have no liability for losses resulting from conduct on the part of state officers or employees which was not within the scope of their official duties or employment.

9

employees and officials.").

The lawsuits authorized by the GTCA may not be commenced unless and until the plaintiff has provided prior written notice of the tort claim to both the Risk Management Division of the State's Department of Administrative Services (DOAS) and "the state government entity, the act or omissions of which are asserted as the basis of the claim." OCGA § 50-21-26 (a) (2). The ante litem notice must identify, among other things, "[t]he name of the state government entity, the acts or omissions of which are asserted as the basis of the claim." OCGA § 50-21-26 (a) (5) (A). In the event that a civil action is filed, the plaintiff must serve "the chief executive officer of the state government entity involved," as well as the director of the DOAS Risk Management Division. OCGA § 50-21-35. Finally, no tort claim or judgment is payable under the GTCA except from the State Tort Claims Trust Fund or from policies of insurance or contracts of indemnity that DOAS has established, OCGA § 50-21-34 (a), and DOAS is required to "establish and charge to state government entities such premiums, deductibles, and other payments, taking into account any direct appropriations as shall be necessary to maintain the soundness of the insurance or self-insurance programs," OCGA § 50-21-33 (d).

10

Thus, reading the Georgia Tort Claims Act as a whole makes it abundantly clear that the immunity it provides is limited to torts committed by a "state officer or employee" who was acting within the scope of his or her official duties or employment on behalf of a specific "state government entity." As this Court recently reiterated,

> [T]he GTCA, while allowing tort suits to proceed against the State within its prescribed parameters, also makes clear that any liability rests not with state employees in their individual capacities but rather with "the state government entity for which the state officer or employee was acting." OCGA § 50-21-25 (b).

Shekhawat, 293 Ga. at 470. The statutory tort claims scheme simply cannot operate if there is no "state government entity for which the state officer or employee was acting" when he committed the alleged tort to be named or substituted as the defendant, § 50-21-25 (b), so that there is no "state government entity, the act or omissions of which are asserted as the basis of the claim" to be notified of the claim, § 50-21-26 (a) (2), (a) (5) (A), with a chief executive officer who may be served as required by § 50-21-35, and which may be assessed insurance premiums by DOAS under § 50-21-33 (d) to cover judgments under § 50-21-34 (a). It is therefore clear that a person who was not acting for a specific "state government entity" cannot be deemed an immune

11

"state officer or employee" as that term is used in the GTCA.[4]

(c) The question then is whether the Agnes Scott police officer defendants were acting for a "state government entity" when they committed the alleged torts against Hartley. The answer is no.

OCGA § 50-21-22 (6) defines a "state government entity" as "a state office, agency, authority, department, commission, board, division,

---

[4] The requirement that a "state officer or employee" be someone who was acting for a specific "state government entity" is not eliminated in situations where it is evident that the state entity will win the case once it has been substituted for that person. The rules governing state officer and employee immunity under the GTCA apply even to lawsuits that the plaintiff will lose as a result of the limits that the state has imposed on the waiver of sovereign immunity of its government entities. See, e.g., OCGA § 50-21-24 (listing 13 activities that "[t]he state shall have no liability for losses resulting from," including the method of providing law enforcement or police protection and false imprisonment and false arrest).

> The [GTCA] provides that the exclusive remedy for any tort committed by a state officer or employee is an action against the state. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to tort liability. This means that if an officer or employee commits a tort while acting within the scope of his or her official duties or employment, but immunity for that kind of tort is not waived by the Act, the plaintiff will not have any state tort remedy against either the state or the officer or employee.

David J. Maleski, The 1992 Georgia Tort Claims Act, 9 Ga. St. Univ. L. Rev. 431, 442-443 (1993) (footnotes omitted). See also Wang v. Moore, 247 Ga. App. 666, 669-670 (544 SE2d 486) (2001) (holding that a tort action against individual employees was barred by the GTCA even where an action against the state government entity for which the employees were acting was procedurally foreclosed due to the plaintiff's failure to serve ante litem notice on that entity); DeLoach v. Elliott, 298 Ga. 319, 320 (710 SE2d 763) (2011) (rejecting the argument that the immunity provided by OCGA § 36-92-3 (a) for certain torts committed by local government employees is limited to situations where the local government entity that must be substituted for the individual employee under § 36-92-3 (b) remains liable and does not have a viable defense).

instrumentality, or institution." It is undisputed that Agnes Scott College – a private school – does not satisfy this definition, and the complaint does not allege that the Agnes Scott police officer defendants were acting for any other state government entity when they committed the alleged torts. Instead, the complaint repeatedly alleges, and the answer admitted, that the officers' tortious conduct occurred while they were "acting in the line and scope of [their] employment with Defendant Agnes Scott College," and in particular as members of the college's Department of Public Safety. These officers were not appointed to their positions by the Governor or by any state government entity, nor were their actions directed and controlled by any state government entity. Moreover, the Campus Policemen Act defines a "campus policeman" as "an employee of an educational facility," which in this case is Agnes Scott College. OCGA § 20-8-1 (2). Indeed, the only relationship between the officer defendants and the state alleged in the complaint was that each officer "is a citizen and resident of the State of Georgia."

After the amicus brief filed by the State called attention to the requirement that a "state officer or employee" be acting for a "state government entity" to come within the protection of the GTCA, the Agnes Scott officer defendants

13

asserted that a state government entity certified them and oversaw their exercise of law enforcement powers as campus police officers – the POST Council created by the POST Act. Even assuming that is true, certification and general oversight by the POST Council do not automatically make the certified officer a "state officer or employee" within the GTCA's definition. In fact, county, municipal, and other local officers – the majority of law enforcement officers in Georgia – are subject to POST certification and oversight but are not "state officer[s] or employee[s]" under the GTCA. See OCGA § 50-21-22 (5) (excluding from the definition of "state" for GTCA purposes "counties, municipalities, school districts, other units of local government, hospital authorities, or housing and other local authorities"); Nichols v. Prather, 286 Ga. App. 889, 892-893 (650 SE2d 380) (2007). We note in this regard that the Campus Policemen Act gives a campus police officer "the same law enforcement powers . . . as a law enforcement officer of the local government with police jurisdiction over such campus," OCGA § 20-8-2, but even if the campus police officer were actually employed by that local government, he normally would not qualify as a "state officer or employee" with immunity under the GTCA. Compare OCGA § 20-8-4 (exempting "campus policemen

14

and other security personnel of the University System of Georgia," which is a state government entity, from the Campus Policemen Act).  See also Corp. of Mercer Univ v. Barrett & Farahany, LLP, 271 Ga. App. 501, 503 (610 SE2d 138) (2005) ("The mere fact that [private university police] officers are given authority to perform certain functions by the Campus Policemen Act, and the Georgia Peace Officer Standards and Training Act, does not make them officers or employees of a public office or agency [for purposes of the Open Records Act]."), superseded by statute, Ga. L. 2006, p. 519, § 5 (codified at OCGA § 20-8-7).

Moreover, the defendants cite no authority for the proposition that mere licensure by a state government entity, or the sort of training, oversight, and discipline in which state licensing boards engage, suffice to make the licensee's torts attributable to the licensing agency – with the resulting damages thus potentially payable from the state treasury.  Licensing agencies do not customarily engage in the type of direction and control of the activities of licensed persons that normally makes a principal liable for the actions of its employees or agents.  Compare OCGA § 50-21-22 (7) ("The term state officer or employee also includes . . . any natural person who is a volunteer

15

participating as a volunteer, with or without compensation, in a structured volunteer program *organized, controlled, and directed by a state government entity* for the purposes of carrying out the functions of the state entity." (emphasis added)). Under the defendants' view, thousands and thousands of Georgians licensed by state boards could seek immunity under the GTCA for torts committed in the course of their licensed work. See http://sos.ga.gov/index.php/?section=licensing (Georgia Secretary of State website listing 43 professions licensed by state entities, ranging from accountants and architects to cosmetologists, funeral directors, massage therapists, and used car dealers). Such an expansive view of potential tortfeasors who qualify as "state officer[s] or employee[s]" is contrary to one of the fundamental purposes of the GTCA – limiting "the exposure of the state treasury to tort liability." OCGA § 50-21-21 (a).

(d) For these reasons, we conclude that, although campus police officers may be considered in some contexts to be law enforcement officers or persons performing services for the state, unless they are acting for an identified "state government entity" when they commit an alleged tort, they do not come within the definition of "state officer or employee" in the Georgia Tort Claims

16

Act and are not entitled to seek immunity under the GTCA. And because the Agnes Scott police officer defendants were not acting for a state government entity when they committed the alleged torts against Hartley, the GTCA provides them no immunity. We therefore reverse Division 1 of the Court of Appeals' plurality opinion.

3.    In supplemental briefing, the officer defendants argue that, even if they are not immune from Hartley's tort action under the GTCA, they are entitled to official immunity under Article I, Section II, Paragraph IX (d) of the Georgia Constitution because they qualify as "officers and employees of the state."[5] It is true that the official immunity provided directly by the Constitution is, in some respects, different in scope than the immunity provided by the GTCA, both in terms of who is protected and in terms of what acts are

---

[5] Article I, Section II, Paragraph IX (d) says:

Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

17

immunized. Compare, e.g., <u>Gilbert v. Richardson</u>, 264 Ga. 744, 747 (452 SE2d 476) (1994) (holding that "state" as used in this constitutional provision includes counties), and id. at 753 (explaining that this constitutional provision does not provide immunity for negligently performed ministerial acts), with, e.g., OCGA § 50-21-22 (5) (defining "state" under the GTCA to exclude counties), and OCGA § 50-21-23 (providing immunity for *all* torts committed by a "state officer or employee" acting for a "state government entity").[6] On the other hand, in light of the common origins of this constitutional provision and the GTCA, the statutory definition of a "state officer or employee," while not controlling the meaning of the constitutional text, is worthy of consideration in interpreting the Constitution's use of the similar phrase "officers and employees of the state." See <u>Kyle v. Ga. Lottery Corp.</u>, 290 Ga. 87, 89 & n.1 (718 SE2d 801) (2011).

We need not resolve this issue now, however, because the defendants' claim of official immunity under the Constitution was not raised in the trial

---

[6] Another constitutional provision, Article IX, Section II, Paragraph IX, authorizes the General Assembly to "waive the immunity of counties, municipalities, and school districts by law." See <u>Toombs County v. O'Neal</u>, 254 Ga. 390 (330 SE2d 95) (1985) (plurality opinion) (noting that this grant of authority is, as to counties, duplicative of the authority already granted to the General Assembly by Article I, Section II, Paragraph IX).

18

court, was not ruled on by that court or the Court of Appeals, and has not been fully briefed in this Court. In particular, the parties have not addressed whether persons who are not elected officials of the state or of a state department or agency, and are not directed and controlled by any politically accountable official or government entity, may be brought within the scope of the Constitution's official immunity provision by being granted law enforcement or other traditional governmental powers by the General Assembly. See Mercer, 271 Ga. App. at 501 (noting that a campus police officer "exercis[es] the police power of the State of Georgia by express legislative grant on a private university campus"). See also DeKalb County Sch. Dist. v. Ga. State Bd. of Educ., 294 Ga. 349, 367-368 (751 SE2d 827) (2013) (addressing an argument that a statute was unconstitutional because it delegated to a private body not accountable to the voters the authority to remove elected members of local boards of education). We therefore express no opinion on this issue, leaving it for potential development and consideration as this case proceeds.[7]

Judgment reversed in part. All the Justices concur.

---

[7] We note in this respect that the defendants mentioned in a footnote to their opening brief in the Court of Appeals that they "are also entitled to Constitutional Immunity under Paragraph IX of Article I, § II of the Constitution of the State of Georgia which, if the case is allowed to proceed, will be the subject of a separate motion for summary judgment, if necessary, at the conclusion of discovery."

19